UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
ERIC MICHAEL ROSEMAN, ALEXANDER LEE,   :
and WILLIAM VAN VLEET, individually and:
on behalf of others similarly situated,:      14cv2657 (DLC)
                                       :
                    Plaintiffs,        :      OPINION AND ORDER
                                       :
          -v-                          :
                                       :
BLOOMBERG L.P.,                        :
                                       :
                    Defendant.         :
                                       :
-------------------------------------- X

APPEARANCES:

For the Plaintiffs:
Dan Getman
Lesley Tse
Artemio Guerra
Getman Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561

For the Defendant:
Matthew W. Lampe
Terri L. Chase
Jones Day
250 Vesey Street
New York, NY 10281


DENISE COTE, District Judge:

     Plaintiffs bring this collective and putative class action

against Bloomberg L.P. ("Bloomberg"), asserting that it failed

to compensate Analytics Representatives for overtime work as

required by federal and state laws.  They have moved to certify

a class pursuant to Fed. R. Civ. P. 23 in connection with the

claim brought by Bloomberg's New York-based Analytics
Representatives for a violation of New York Labor Law § 650 et
seq. ("NYLL").[1]  For the reasons that follow, the motion is
granted.

<u>BACKGROUND</u>

I.   Factual Background

Bloomberg assists its clients in the operation of the
Bloomberg Terminal, a computer software system which allows
clients to access and analyze financial data.  Many Bloomberg
clients also buy Bloomberg's hardware package, which includes a
monitor and keyboard.  The Bloomberg Terminal has over 30,000
different functions.  When clients need help navigating the
Terminal's functions, they open a chat window that links them
directly to an Analytics Representative.  Based on the initial
text or question the Bloomberg client enters into the chat, an
algorithm assigns the chat to an Analytics Representative with
the relevant expertise.  Questions can also be referred to
Analytics Representatives by account representatives in the
Sales department.  There are representatives located in ten

---

[1] The plaintiffs also bring a motion to certify a class action to
pursue claims of Bloomberg California-based Analytics
Representatives which are brought under California's labor law.
That motion is addressed in a separate order.  All plaintiffs
also bring a collective action under the Fair Labor Standards
Act, 29 U.S.C. § 201 et seq.

cities across the globe who are available to chat at all times
of the day or night.  Bloomberg estimates that, in New York
alone, nearly 1,300 individuals have worked as Analytics
Representatives since April 2008.

Questions from clients take a myriad of forms: some require
very specific technical assistance, others seek to learn a new
function on the Terminal, and others are generalized queries
about how to use the Terminal to meet their business needs.
While many client questions are relatively straightforward and
lend themselves to a clear answer from a Representative who has
mastered the Terminal, others are more complex and can lead to
varying responses from different Representatives.
Representatives differ in their approach to the latter type of
question: for example, while one plaintiff tries to identify the
"best" solution among many and present one answer to a client,
another prefers to guide a client through multiple approaches to
addressing the presented concern.

Analytics Representatives are internally rated based on the
quality of their answers to client queries.  Department
supervisors review the transcripts of the chats between the
Representatives and clients, assigning a "Quality Control"
rating based on the correctness of the guidance provided.
Although not every chat goes through the quality control

process, every Representative will have a certain portion of his or her chats rated.  The supervisors that are in charge of Quality Control still work directly with clients, often multi-tasking so that they are rating their colleagues' chats while chatting with clients at the same time.

There is limited opportunity for advancement within the Analytics department.  After initial training, Analytics Representatives answer general client questions about the Bloomberg Terminal.  After approximately half a year as "Generalists," Representatives begin to focus on a special area of expertise within the Terminal.  The Representatives undergo training and certifications in their respective specialty areas, and eventually earn the title of "Specialist."  After an additional seven months to one year in that role, some Specialists will transition to the "Advanced Specialist" role, which requires an even higher level of expertise in their chosen field.  Others will move to the Sales department.  While the specific tasks within the Analytics department may be varied, all Representatives ultimately address client concerns and attempt to solve them.  When a Generalist cannot answer a client question directly, the Generalist will transfer the chat to a Specialist or Advanced Specialist with the relevant expertise.

Most Analytics Representatives eventually move to the Sales department. A small number of Representatives, however, stay in the Analytics department and take on supervisory roles.

Although every Analytics Representative responds to client inquiries, they may also have other responsibilities depending on interests, area of expertise, and position within the Analytics department. Specialists and Advanced Specialists may spend time away from direct client contact by engaging in other activities such as training Generalists, writing blog posts regarding the Bloomberg Terminal's functionality, or preparing training materials. All Representatives, however, spend a significant amount of time working with customers.

In its recruitment materials, Bloomberg does not differentiate among any roles within the Analytics department; instead, the department is described holistically, with reference to one comprehensive role:

> The journey starts in the Analytics department, where you will interact directly with clients via our online help desk, providing rapid solutions and solving complex queries regarding the financial data and analytics of the Terminal. In this role, you will work across asset classes, gaining exposure to a diverse range of clients from hedge funds to large companies.

Bloomberg's description of the Analytics department is a sweeping one, referencing one training course: "After

successfully completing the training program, you will join the
Analytics desk, where you will gain the foundational product
knowledge to advance your career."  The only career movement or
differentiation noted in the recruitment literature is the
opportunity to move to a different department altogether:
"Typically, after 12-18 months in Analytics, you will have the
opportunity to move to the Sales department."

II.  Procedural History

Eric Michael Roseman filed a class and collective action
complaint on April 4, 2014.[2]  (Dkt. No. 2)  Following motion
practice, a third and final amended complaint was filed on March
23, 2016.  It alleges violations of the Fair Labor Standards Act
("FLSA"), NYLL, and the California Labor Code.

On August 19, 2016, plaintiffs filed the instant motion
seeking certification of the following NYLL class: "all
representatives in the Analytics department in New York who were
not paid time and one-half for hours over 40 worked in one or
more weeks at any time within the six years preceding the filing
of this Complaint and the date of final judgment in this
matter."  Alexander Lee is the single named plaintiff for this

---

[2] Mr. Roseman was originally listed under a pseudonym, "Eric
Michael."  On April 5, 2015, the judge to whom this case was
assigned required the plaintiff to include his full name.

proposed class.[3]  The motion became fully submitted on November 21.

The case was reassigned to this Court on August 15, 2017. The plaintiffs have also filed a motion for partial summary judgment, which the parties agree should be decided after the motion for certification is resolved.

<u>DISCUSSION</u>

Class certification is governed by Fed. R. Civ. P. 23. Rule 23(a) requires that a proposed class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class.  Additionally, Rule 23(b)(3) "requires the party seeking certification to show that questions of law or fact common to class members predominate over any questions affecting only individual members and that class treatment would be superior to individual litigation."  <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 547 (2d Cir. 2010) (citation omitted).

---

[3] While Mr. Roseman remains listed in the complaint's caption, plaintiffs' brief notes that "Named Plaintiff Roseman does not seek to be a Class Representative for the New York Class."

7

In deciding whether a class should be certified, the court determines whether the requirements of Rule 23 are met, not who will prevail on the merits.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974).  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Amara v. CIGNA Corp., 775 F.3d 510, 519 (2d Cir. 2016) (citation omitted).  Often, the "rigorous analysis" necessitated by Rule 23 "will entail some overlap with the merits of the plaintiff's underlying claim." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011).  Factual determinations made for the purposes of Rule 23, however, are "made only for purposes of class certification and [are] not binding on the trier of facts, even if that trier is the class certification judge."  In re Initial Public offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).

Rule 23 "contains an implicit threshold requirement that members of a proposed class be readily identifiable." In re Petrobas Securities, 862 F.3d 250, 264 (2d Cir. 2017) (citation omitted).  This "ascertainability" requirement necessitates "that a class be defined using objective criteria that establish a membership with definite boundaries." Id.  Plaintiffs clearly meet this requirement and the defendant does not contest this point.  The proposed class, Analytics Representatives in New

8

York, is sufficiently definite so that the Court can easily determine whether a specific individual is a member.

The defendants principally dispute that the requirements of Rule 23(b) will be met here.  In particular, they argue that the plaintiffs have not carried their burden to show that common issues will predominate over the individualized inquiries that must be undertaken to show that the NYLL's overtime requirement applies to a specific Analytics Representative.  The issues that arise under Rule 23(b) will be addressed after the Rule 23(a) inquiry is undertaken.

I.   Rule 23(a)

   a. Numerosity

Courts presume numerosity such that joinder is impracticable where the class exceeds 40 members.  <u>Pennsylvania Public School Employee's Retirement System v. Morgan Stanley & Co., Inc.</u>, 772 F.3d 111, 120 (2d Cir. 2014).  The parties agree that this element is easily met.  It is uncontested that more than 1,000 current and former Bloomberg employees are putative class members.

   b. Commonality

Plaintiffs' claims "must depend upon a common contention."  <u>Dukes</u>, 564 U.S. at 350.  That "common contention, moreover, must

9

be of such a nature that it is capable of classwide resolution -
- which means that determination of its truth or falsity will
resolve an issue that is central to the validity of each one of
the claims in one stroke." Id.  The relevant inquiry is whether
a classwide proceeding is capable of "generat[ing] common
answers apt to drive the resolution of the litigation." Id.
(citation omitted).  Rule 23(a)'s commonality requirement may be
satisfied if plaintiffs "demonstrate that the class members have
suffered the same injury." Johnson v. Nextel Communications,
Inc., 780 F.3d 128, 137 (2d Cir. 2015) (citation omitted).
"Even a single common question will do." Dukes, 564 U.S. at
359.  And while the parties seeking certification must show that
a common contention is capable of classwide resolution, "[t]he
claims for relief need not be identical for them to be common;
rather, Rule 23(a)(2) simply requires that there be issues whose
resolution will affect all or a significant number of the
putative class members." Johnson, 780 F.3d at 137.

Plaintiffs have identified numerous common questions of law
and fact.  Common questions of fact include whether the
plaintiffs worked over forty hours a week, whether Bloomberg
knew that they did, and whether Bloomberg failed to give the
plaintiffs overtime pay.  Common questions of law include
whether Bloomberg's conduct with respect to the class is a

violation of the NYLL, or whether an exemption under the NYLL applies to Bloomberg's Analytics Representatives.

Bloomberg acknowledges that there are many common questions of fact and law that apply to the class, but argues that the plaintiffs must show that the central issue in the case is susceptible to classwide resolution.  Bloomberg contends that the central issue -- which it identifies as the availability of an exemption to NYLL's overtime rules for administrative employees -- is not susceptible to classwide resolution because of the significant variation in the class members' experiences and duties.  Even if it were not sufficient for the plaintiffs to demonstrate, as they have here, that there are a host of common questions that must be answered as to each class member, they have shown as well that the issue of whether the administrative exemption applies to Analytics Representatives is both an issue that must be answered for each class member and that it is an issue capable of classwide resolution.  The resolution of this critical issue "will affect all or a significant number of the class members."  Johnson, 780 F.3d at 137.  This determination is discussed in greater detail below in the discussion of the predominance requirement.

c. Typicality

The claim presented by a named plaintiff must be typical of
the experience of class members.  "Rule 23(a)(3)'s typicality
requirement is satisfied when each class member's claim arises
from the same course of events and each class member makes
similar legal arguments to prove the defendant's liability."
Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1992).  The
factual background of each named plaintiff's claim, however,
need not be identical to that of all of the class members.
"When it is alleged that the same unlawful conduct was directed
at or affected both the named plaintiff and the class sought to
be represented, the typicality requirement is usually met
irrespective of minor variations in the fact patterns underlying
individual claims."  Id. at 936-37.  The commonality and
typicality requirements of Rule 23(a) tend to "merge" into one
another, as both "serve as guideposts for determining whether .
. . the named plaintiff's claim and the class claims are so
interrelated that the interests of the class members will be
fairly and adequately protected in their absence." Dukes, 564
U.S. at 349 n.5.

The named plaintiff's claims are typical of the class
members' claims.  All class members have the same title and
essential job function, have identical initial job training,

12

have been evaluated using the same performance metrics, have been paid on the same basis, and have been subject to the same overtime policy.

Bloomberg argues that the claims of the named plaintiff for the New York class are not typical of those of the class because he testified that he had a monotonous day-to-day experience on the job.  Other Analytics Representatives testified to having more complex duties and exercising their discretion while working.  This one employee's reaction to his work does not render his claims atypical.  His boredom is not inconsistent with the allegation that he worked overtime and was denied overtime pay, nor does it speak to his actual duties on the job.

d. Adequacy

Under Rule 23(a)(4), the inquiry regarding "adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, 827 F.3d 223, 231 (2d Cir. 2016) (citation omitted).  "To assure vigorous prosecution, courts consider whether the class representative has adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members might undermine

13

that incentive." Id.  Rule 23(a)(4) also "serves to uncover . . . competency and conflicts of class counsel." Id.  "Class counsel is supposed to represent the class, not the named parties." Charron v. Wiener, 731 F.3d 241, 254 (2d Cir. 2013) (citation omitted).  Indeed, "the role of class counsel is generally greater than that of the class representatives in protecting the interests of absent class members, and . . . class counsel have a duty to protect the interests of the majority of the class even if the named plaintiffs hold a different view." Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1076 (2d Cir. 1995).

Both criteria are satisfied.  Bloomberg does not contest the adequacy of plaintiffs' counsel.  The attorneys are qualified, experienced, and able to conduct complex litigation. Further, the named plaintiff does not have any interests antagonistic to his fellow class members' interests.

Bloomberg challenges the ability of the named plaintiff to adequately represent the class because, as just described, he found his job boring.  But that employee's critique of his job -- as one that "a monkey can do" -- does not undermine his interest in vigorously pursuing the claims of the class.  While other class members testified that the job is more complicated than Lee described, that difference does not alter Lee's

14

underlying claim that the class is entitled to overtime pay and does not impede his ability to represent the class.  The named plaintiff's interests are directly aligned with those of the absent class members: they have all experienced the same identified injury as a result of the uniform application of the same pay policy of the defendant.

II.  Rule 23(b)

   a. Predominance

    As noted, the defendant principally resists certification through its argument that the plaintiffs have failed to carry their burden under Rule 23(b)'s predominance requirement.  The Rule 23(b)(3) "predominance" requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Anchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).  The purpose of the requirement is to "ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Myers, 624 F.3d at 547 (citation omitted).  This "predominance" requirement is satisfied if: "(1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues

15

are more substantial than the issues subject only to individualized proof." In re Petrobas Securities, 862 F.3d at 270 (citation omitted).

Rule 23(b)(3)'s predominance requirement is "more demanding than Rule 23(a)." Johnson, 780 F.3d at 138 (citation omitted). While a court assessing the Rule 23(a) commonality and 23(b) predominance requirements will consider similar elements -- the components of the claims and defenses to be litigated, and whether generalized evidence can be offered to prove those elements on a classwide basis or whether individualized proof will be needed to establish each class member's entitlement to relief -- predominance requires a further inquiry than Rule 23(a), "into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." Id. At the certification stage, plaintiffs must "show that more substantial aspects of this litigation will be susceptible to generalized proof for all class members than any individualized issues." Myers, 624 F.3d at 551 (citation omitted). Accordingly, "courts must consider potential defenses in assessing the predominance requirement." Id.

The core question that must be resolved for the New York class in this case is whether Analytics Representatives were entitled to overtime pay under state law. It is undisputed that

16

they were entitled to that pay unless an exemption applies.
Bloomberg will rely at trial on an exemption under the NYLL.

The NYLL exemptions mirror the criteria set forth in the
FLSA and its exemptions.  See 12 NYCRR § 142-3.2 ("[A]n employer
shall pay employees subject to the exemptions of section 13 of
the Fair Labor Standards Act"); Ramos v. Baldor Specialty Foods
Inc., 687 F.3d 554, 556 n.1 (2d Cir. 2012) ("[T]he NYLL . . .
applies the same exemptions as the FLSA."); Reiseck v. Universal
Communications of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010)
("The NYLL . . . mandates overtime pay and applies the same
exemptions as the FLSA.") (citing NYCRR § 142-3.2).

The exemption upon which Bloomberg relies here applies to
employees "employed in a bona fide . . . administrative . . .
capacity."  29 U.S.C. § 213(a)(1).  According to the regulations
defining this "administrative exemption," it applies to

> any employee: (1) Compensated on a salary or fee basis
> at a rate of not less than $455 per week . . . ;
> (2) Whose primary duty is the performance of office or
> non-manual work directly related to the management or
> general business operations of the employer or the
> employer's customers; and (3) Whose primary duty
> includes the exercise of discretion and independent
> judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (emphasis supplied).

At trial, Bloomberg will bear the burden of showing that
all three elements for this exemption are satisfied.  Ramos, 687

17

F.3d at 558.  It is undisputed that Bloomberg will be able to show that Analytics Representatives were compensated at a rate of over $455 per week.

The application of this exemption, therefore, hinges on the second and third elements, which share a common term.  Each element requires a determination of an employee's primary duty. For the administrative exemption to apply, that primary duty must directly relate to "management or general business operations," and include the "exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

To determine an employee's primary duty, a court must analyze "all the facts in a particular case," looking to the "principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  An employee's primary duty depends upon factors like "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee."  29 C.F.R. § 541.700(a).  An employee who spends "more than 50 percent" of their time on exempt work "will generally satisfy

18

the primary duty requirement." Id. at § 541.700(b).  See Gold
v. New York Life Ins. Co., 730 F.3d 137, 145 (2d Cir. 2013).
Whether the administrative exemption applies "is a mixed
question of law and fact" that relies on "the employees' actual
job characteristics and duties" and necessitates consideration
of "all the facts in a particular case."  Myers, 624 F.3d at 548
(citation omitted).

     The plaintiffs have shown that the issues pertinent to
Bloomberg's affirmative defense can be resolved through common
proof at trial, and that those issues will far outweigh any
individualized determinations that must be made, such as the
calculation of the precise number of overtime hours each
employee worked.  The plaintiffs have shown that evidence
applicable to all, or virtually all, class members will be used
to define their primary duty and to determine whether that
primary duty shares the other characteristics necessary for
Bloomberg to demonstrate that the administrative exemption
applies, such as the exercise of discretion and independent
judgment.  The plaintiffs have done so by pointing to evidence
that Analytics Representatives share the same primary duty:
offering technical support regarding the Bloomberg Terminal to
Bloomberg's customers.[4]  That evidence comes from pertinent

---

[4] Those members of the Analytics department whose primary duty
may be the supervision of the department's employees and the

documents in Bloomberg's files relating to the work of Analytics Representatives, Bloomberg's system for managing and insuring the quality of those employees' work, testimony from such employees, and the common sense inferences that flow from the undisputed facts regarding the operations and size of the department in which these employees work.

The defendant argues that there is no primary duty common to the proposed class.[5]   According to the defendant, the responsibilities of the class members are so varied that the class members do not share a primary duty and that no generalized proof can be used to identify a single primary duty for the class.  Accordingly, the defendant argues, individual issues will predominate at trial and a class should not be certified.  Bloomberg emphasizes that Analytics Representatives use different techniques in responding to client inquiries, have

management of the department's overall operations appear to have a separate title: Team Leaders.  Team Leaders, in turn, are supervised by regional Managers.  The plaintiffs define a class composed only of Representatives and do not seek to include Team Leaders or Managers in their class action.

[5] Although at any trial of an overtime claim brought by an Analytics Representative, Bloomberg will have to prove the existence of a qualifying primary duty for that plaintiff if it wishes to argue that the administrative exemption applies, Bloomberg has declined in opposition to this motion to describe any primary duty that may exist for any of its Analytics Representatives, or to admit that the primary duty for any Analytics Representative is responding to client inquiries regarding the Bloomberg Terminal.

different levels of expertise regarding the functionality of the
Terminal and client businesses, and that those techniques and
levels of expertise shift over the months that an Analytics
Representative spends in the department, as does the degree to
which an individual is supervised.  Bloomberg emphasizes as well
that some Analytics Representatives perform other tasks, such as
helping to train Generalists and Specialists or to make sales.

While the defendant points out variances in the proposed
class members' responsibilities and impressions of their jobs,
individual issues nevertheless do not predominate.  The evidence
presented by both plaintiffs and the defendant converge on one,
basic point:  Analytics Representatives answer client questions
about the Bloomberg Terminal.  This is their primary duty.  All
the testimony offered in this case ultimately points to that
role, despite the varying amounts of time, discretion, and
responsibility described by class members as they perform that
primary duty.  Plaintiffs can satisfy the predominance
requirement by "demonstrating that the job duties of putative
class members [are] largely consistent across the class and that
individual differences in job tasks would not be of the
magnitude to cause individual issues to predominate." Myers,
624 F.3d at 549 (citation omitted).  The evidence of differences
among the daily routines of the proposed class members or the
differences in their auxiliary duties do not overcome the

plaintiffs' evidence that the primary duty of the class members can be determined through generalized proof because that primary duty is consistent across the class.[6]

Finally, Bloomberg contends that individual issues will outweigh generalized proof in this case because classwide damages are not susceptible to generalized proof. Bloomberg asserts that the trier of fact will have to inquire into the daily routine of each employee to sort out how much time they spent working. This argument is unconvincing for two reasons. First, the plaintiffs argue that Bloomberg's electronic data will reveal most, if not all, of the overtime liability. This data -- through electronic time stamps -- will show when Analytics Representatives were logged on to their computers, either on site or remotely. It will also indicate if Representatives worked outside of regular shift hours. Second, even if the plaintiffs must supplement this data with some individual testimony, that will not defeat the plaintiffs'

---

[6] Indeed, it will not be altogether surprising if Bloomberg shifts gears at trial and asserts that the primary duty of Analytics Representatives is to respond to client inquiries regarding the Bloomberg Terminal, and that the nature of that primary duty meets all the requirements for the administrative exemption to overtime pay obligations. As noted, even though Bloomberg has explained that it intends to rely on the administrative exemption under the FLSA to avoid the statutory obligation to pay for overtime work, it has declined to identify in opposition to this motion the primary duty of any Analytics Representative.

showing of predominance.  "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  Sykes v. Mel S. Harris and Associates LLC, 780 F.3d 70, 81 (2d Cir. 2015) (citation omitted).  Here, the plaintiffs have shown that they can prove through common evidence that all members of the proposed class were injured by the same action.  Plaintiffs do not need to prove that common evidence will offer "the precise amount of damages incurred by each class member."  Id. at 82 (citation omitted).

   b. Superiority

   Rule 23(b)(3) further requires that a class action must be the most fair and efficient method of resolving the claims at issue.  Courts must consider four nonexclusive factors when applying this "superiority" requirement:

> (a) the class members' interests in individually
> controlling the prosecution or defense of separate
> actions; (b) the extent and nature of any litigation
> concerning the controversy already begun by or against
> class members' (c) the desirability or undesirability
> of concentrating the litigation of the claims in the
> particular forum; and (d) the likely difficulties in
> managing a class action.

Fed. R. Civ. P. 23(b).  "[M]anageability is a component of the superiority analysis."  In re Petrobas, 862 F.3d at 268.

   Here, a class action is a superior method to individually litigating the NYLL claims.  Given that common issues

predominate over individual ones, a class action preserves

judicial resources and is far less burdensome for the parties.

<u>CONCLUSION</u>

The plaintiffs' August 19, 2016 motion for certification of

a NYLL class for Analytics Representatives is granted.

Dated:     New York, New York
           September 21, 2017

_____
DENISE COTE
United States District Judge