UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC MICHAEL ROSEMAN, ALEXANDER
LEE, and WILLIAM VAN VLEET, individually
and on behalf of others similarly situated,

                Plaintiffs,

      v.

BLOOMBERG L.P.,

                Defendant.

Case No. 14-CV-2657 (DLC)
(KNF)

ECF Case

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE
ISSUANCE OF CLASS NOTICE**

**INTRODUCTION**

On October 5, 2017, Defendant Bloomberg L.P. ("Bloomberg") filed a Rule 23(f)

Petition to the Second Circuit (*see* 17-3195-cv, attached as Ex. A to the Declaration of Matthew

W. Lampe) (the "Petition") for Permission to Appeal this Court's Orders granting class

certification of Plaintiffs' New York Labor Law and California state law claims (Dkt. 307 and

308) (the "Certification Orders").  By this motion, Bloomberg now respectfully requests this

Court to grant a temporary stay of dissemination of class notice pending (i) the resolution of

Bloomberg's Petition and (ii) if the Petition is granted, the Second Circuit's decision regarding

Bloomberg's appeal.

Courts routinely stay class notice pending the outcome of a Rule 23(f) appeal so as to

prevent potential confusion, delay, and inefficiency caused by the issuance of multiple notices

(including corrective notices) should the appeal be successful.  Bloomberg's proposed limited

stay, which would have no impact on the parties' and this Court's efforts to finalize the form of

notice or the class lists, would prevent this harm without prejudicing Plaintiffs.  Accordingly,

this Court should grant Bloomberg's Motion and stay class notice as other courts have

overwhelmingly done when faced with this precise circumstance.

**ARGUMENT**

District courts have broad discretion to stay notice pending the resolution of an

interlocutory appeal.  *Risinger v. SOC LLC*, 2015 WL 7573191, at *1 (D. Nev. Nov. 24, 2015)

("Federal Rule of Civil Procedure 23(f) permits a district court, in its discretion, to enter a stay of

proceedings pending a petition for permission to appeal."); *see also* Fed. R. App. P. 8(a)(1); 28

U.S.C. § 1651; *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C.

2012) ("This Court has discretion as to the timing of notice") (citing Fed. R. Civ. P. 23(c) and

(d)).  In determining whether to stay proceedings, courts balance the following factors: "(1)

whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *U.S. S.E.C. v. Citigroup Glob. Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002). These factors weigh decisively in favor of staying class notice in this case pending Bloomberg's appeal.

A.     **Courts Routinely Stay Notice to Prevent Confusion, Delay and Inefficiency**

Courts routinely hold that the balance of hardships between the defendants and other interested parties, as well as the public interest (the second, third, and fourth *Hilton* factors, respectively) favor a stay of class notice pending appeal. "[P]roceeding with class notice while the Rule 23(f) petition is pending could lead to confusion among the public and the absent class members." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. at 94. "Because a potential plaintiff in a Rule 23(b)(3) action is bound unless he or she opts out, voiding a previously issued class notice could create significant issues regarding whether additional action must be taken after any corrective notice is received by the class members." *Powell v. Tosh*, 2012 WL 1202289, at *5 (W.D. Ky. Apr. 10, 2012). This, in turn, "has the potential to cause delay, confusion, and difficulty for all parties, including [named plaintiff]." *Risinger*, 2015 WL 7573191, at *2.

The harm to potential class members is especially intractable because corrective notice, *i.e.*, a complicated legal document altering the effect of a previous complicated legal document, may not clear up the inevitable confusion. *See Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *4-5 (N.D. Cal. Nov. 15, 2012) (explaining that "likelihood of harm" to putative class members weighed in favor of stay; curative notice could not cure likely confusion should

2

class be decertified or modified); *Willcox v. Lloyds TSB Bank, PLC*, 2016 WL 917893, at \*7 (D.

Haw. Mar. 7, 2016) ("[S]ignificant confusion could result to potential class members who would

be uncertain whether they needed to opt out of the class or whether they were still included in the

class action at all.").  But courts also recognize that premature class notice can cause irreparable

reputational harm to defendants.  *Willcox*, 2016 WL 917893, at \*7 ("[P]remature issuance of

class notice could certainly damage [the defendant's] reputation.").  And courts likewise hold

that public interest favors staying class notice while appeal is pending.  *See In re Rail Freight*

*Fuel Surcharge Antitrust Litig.*, 286 F.R.D. at 94 ("confusion among the public and the absent

class members" is a "public interest consideration [that] counsels in favor of staying class notice

until after the court of appeals has acted on the petition"); *Whitlock v. FSL Mgmt., LLC*, 2012

WL 6675124, at \*4 (W.D. Ky. Dec. 21, 2012) ("significant confusion" resulting from corrective

notice was against the public interest) (quoting *Powell*, 2012 WL 1202289, at \*5).

In sum, while courts sometimes focus on different factors and articulate the harm from

premature notice in different ways, numerous courts agree that "district court[s] should stay the

dissemination of class notice" pending appeal.  *Whitlock*, 2012 WL 6675124, at \*4 (internal

citation omitted); *see also In re Polyurethane Foam Antitrust Litig.*, 2014 WL 12591692, at \*5

(N.D. Ohio May 16, 2014); *In re Urethane Antitrust Litig.*, 2006 WL 3021126, at \*3 (D. Kan.

Oct. 23, 2006); *Jenkins v. Hyundai Motor Fin. Co.*, 2008 WL 2268319, at \*4 (S.D. Ohio June 2,

2008); *Willis v. Big Lots, Inc.*, 2017 WL 1734224, at \*3 (S.D. Ohio May 4, 2017), report and

recommendation adopted, 2017 WL 2493142 (S.D. Ohio June 8, 2017); *Heinzl v. Cracker Barrel*

*Old Country Store, Inc.*, 2016 WL 5339410, at \*1 (W.D. Pa. July 8, 2016); *Aguayo v. U.S. Bank*,

2015 WL 13344756, at \*2 (S.D. Cal. June 26, 2015); *Wachtel ex rel. Jesse v. Guardian Life Ins.*

*Co. of Am.*, 453 F.3d 179, 183 (3d Cir. 2006); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1077 (6th Cir. 1996).

Likewise, this Court should stay class notice pending decision on Bloomberg's Petition and any eventual appeal. Without a stay, notice will issue to over 1,400 putative class members, many of whom are active Bloomberg employees. Should the Second Circuit reverse, modify, or remand the Certification Orders, "class members will need to be recontacted," with "the potential to cause delay, confusion, and difficulty for all parties including [Plaintiffs]." *Risinger*, 2015 WL 7573191, at *2. In addition, Bloomberg would be irreparably harmed, as the multiple notices regarding the legal rights of numerous active employees would inevitably lead to confusion, requests for clarification, and potential reputational harm. Accordingly, this Court should exercise its discretion to stay class notice and grant Bloomberg's Motion.

Bloomberg is cognizant that this Court previously rejected a request to stay class notice pending appeal. *In re Elec. Books Antitrust Litig.*, 2014 WL 1641699, at *12-14 (S.D.N.Y. Apr. 24, 2014) (Cote, J.). In that case, the Court characterized the authority supporting such a request as "aberrational." [1] *Id.* at 12-13. However, as Bloomberg has demonstrated, such authority in fact abounds, as many courts have granted limited stays with respect to class notice. Moreover, the circumstances in that case are all absent here: notice had already issued multiple times and would issue again regardless of the outcome of the appeal; the notice at issue was being sent, at defendant's request, after the liability trial had already occurred; the defendant requested a broad stay on the eve of damages trial; and the defendant had virtually no chance of success on appeal.

---

[1] As the Court pointed out, the "aberrational" case was one in which the parties had entered into a settlement and the reviewing court was recommending immediate review by the court of appeals, *see Ramirez v. DeCoster*, 203 F.R.D. 30 (D. Me. 2001), circumstances absent in both the instant case and *In re Elec. Books Antitrust Litig*. However, as Bloomberg has demonstrated, in circumstances much more similar to those in this case, courts have routinely found stay of notice to be appropriate.

**B.     Bloomberg Has a Substantial Case on Appeal and on its Petition, Further Supporting Stay**

Where, as here, the balance of harms and the public interest favor a limited stay of class notice under the second, third and fourth *Hilton* factors, courts grant such relief even if not convinced that the defendant has a likelihood of success (the first *Hilton* factor).  *See, e.g., In re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. at 94; *Whitlock*, 2012 WL 6675124, at *4; *In re Polyurethane Foam Antitrust Litig.*, 2014 WL 12591692, at *5; *In re Urethane Antitrust Litig.*, 2006 WL 3021126, at *3; *Jenkins*, 2008 WL 2268319, at *4; *Willis*, 2017 WL 1734224, at *3.  However, Bloomberg has in fact demonstrated that it has a substantial case on appeal and on its Petition, further supporting this Motion.

The Court need not "confess error and predict reversal by the Second Circuit" to find that the "likelihood of success" factor supports granting a stay.  *Network Enterprises, Inc. v. APBA Offshore Prodcs., Inc.*, 2007 WL 398276, at *2 (S.D.N.Y. Feb. 5, 2007) ("While I rejected [defendant's] contentions … and remain of the opinion that I was right in doing so," defendant's "substantial case on the merits" sufficient where other factors favored stay); *see also Carvel Corp. v. Eisenberg*, 1988 WL 120135, at *2 (S.D.N.Y. Oct. 31, 1988) ("[T]he mere fact that defendants' view of the merits is one that I do not share does not foreclose the issue of whether a stay should issue.").  Rather, the likelihood of success factor is met by demonstrating a "substantial case to lay before the Court of Appeals." *Network Enterprises, Inc.*, 2007 WL 398276, at *2; *see also Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 253 (N.D.N.Y. 2002) (standard met by "'substantial case on the merits,' even if ultimate success is not a mathematical probability.") (quoting *Morgan Guar. Tr. Co. of New York v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988)).

Bloomberg has a substantial case to put before the Second Circuit.  With respect to the merits of an eventual appeal, Bloomberg respectfully submits that the Court erred in concluding Analytics Representatives all have the same "primary duty" in that they "answer client questions about the Bloomberg Terminal"  (Dkt. 307 at 21).  At least as reached classwide, this conclusion is incorrect.  Nearly *every* Representative performs other duties, and many Representatives – particularly Specialists and Advanced Specialists – spend much or even a majority of their time on additional, often more important duties.  *See, e.g.,* Dkt. 201, ¶ 20 (Advanced Specialists typically spend 40-60% of their time on work other than consulting with clients); *see also* Petition 4-8, 16-18.  It is impossible to say categorically that Representatives have the "primary" duty of "answer[ing] client questions" rather than helping to train, manage, and evaluate other Representatives, working on product development, or promoting sales – all exempt activities.  29 C.F.R. § 541.200(a)(2) ("work directly related to the management" exempt); 8 Cal. Code Regs. § 11040(1)(A)(2)(d); 29 C.F.R. § 541.201(c); 29 C.F.R. § 541.203(b) ("promoting the employer's financial products" exempt work); *Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 706 (S.D.N.Y. 2005) ("providing … training services" exempt); *see also* Petition 16-17.  Moreover, these other duties cannot be disregarded as merely "auxiliary" (Dkt. 307 at 21) as the record clearly shows that, by design, these duties become increasingly more prominent and in some cases the most prominent duty as a percentage of time as Representatives progress and develop advanced skills.  (Dkt. 201, ¶ 22; Petition 4-8, 19-20.)

But even if every Representative's primary duty *were* "answer[ing] client questions," Bloomberg has made a substantial showing that such a generalized conclusion would not justify certification.  *First*, it would not resolve whether Representatives categorically "perform[] … office or non-manual work directly related to the management or general business operations of

6

the employer or the employer's customers."  29 C.F.R. § 541.200(a)(2); *see also* 8 Cal. Code

Regs. § 11040(1)(A)(2)(a)(i).  This is because the nature of "answering client questions" varied

widely from person to person and from time to time.  Some client counseling – such as Plaintiffs'

work "assist[ing] Portfolio Managers" "to create and manage proprietary portfolios to best

prepare portfolio analytics," Dkt. 207-3 at Ex. 2, and "generat[ing] solutions … on security

pricing, relative valuation, hedging, risk and return, derivative valuation, and idea generation,"

Dkt. 207-5 at Ex. 2 – obviously involved work "directly related" to the "general business

operations" of Bloomberg's "customers."  Other client counseling – such as answering questions

about the Terminal's email features – might not.  *See* Petition 21-22.

  *Second*, determining that Representatives "answer client questions" does not resolve

whether individual Representatives' primary duty categorically "includes the exercise of

discretion and independent judgment."  29 C.F.R. § 541.200(a)(3); *see* 8 Cal. Code Regs.

§ 11040(1)(A)(2)(b).  This Court *acknowledged* differences in the "amounts of … discretion"

Representatives exercised, as well as the "degree to which" they were "supervised."  Dkt. 307 at

21.  Rightly so:  some testified that they largely cut-and-pasted previous answers and frequently

ran their answers past their supervisors, while others worked on their own to provide complex,

nuanced solutions to fit their clients' complex, nuanced needs.  *Compare* Dkt. 207-10 at 396:6–

17 (stating he merely copied and pasted advice and that a "monkey" could do his job) *with* Dkt.

211, ¶ 17 (describing "engaging clients in discussions about the economic … theory underlying

various Terminal functions" and the client's own needs).  Bloomberg respectfully submits that

this Court did not balance these acknowledged differences – which go to the heart of the liability

issues in the case – against the purportedly common questions, as Rule 23 requires.  *See Cuevas

v. Citizens Fin. Grp., Inc.*, 526 F. App'x 19, 21 (2d Cir. 2013); *see also* Petition 15-16, 22-23.

In sum, the Court's conclusion regarding primary duty is only the start of the liability

analysis, which ultimately turns on whether the primary duty of each class member satisfies the

"management or general business operations" and "discretion and independent judgment" prongs

of the exemption.   Because "answer[ing] client questions" involved materially different work

depending on the client and the Representative, the purported susceptibility of the primary duty

determination to common proof does not automatically mean that the two-prong test is

susceptible to common proof.  Bloomberg respectfully submits that, in granting the Certification

Orders, this Court erred by not sufficiently assessing the impact on Rule 23 predominance of the

individual issues inherent in application of the two-prong test.  *See* Petition 21-23.

Likewise, Bloomberg has put forth a substantial case with respect to its Petition.  Such

petitions are granted where certification "will effectively terminate the litigation and there has

been a substantial showing that the district court's decision is questionable."  *Hevesi v. Citigroup*

*Inc.*, 366 F.3d 70, 76 (2d Cir. 2004).  In assessing the first prong, courts have recognized the

settlement pressure that can accompany class certification: "when damages allegedly owed to …

thousands of potential claimants are aggregated and decided at once, the risk of error will often

become unacceptable," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011), and

therefore "class certification often leads to a hefty settlement" despite the defendant's

"meritorious defense," *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1713 (2017); *see also Hevesi*,

366 F.3d at 80 (noting the "hydraulic pressure on defendants to settle").  Where, as here,

certification threatens to bring a defendant's potential liability north of $193 million (*see* Petition

14), courts of appeals have found interlocutory review appropriate.  *See Szabo v. Bridgeport*

*Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (granting review where the decision "turn[ed] a

$200,000 dispute … into a $200 million dispute"); *see also Sumitomo Copper Litig. v. Credit*

*Lyonnais Rouse, Ltd.*, 262 F.3d 134, 136 (2d Cir. 2001) (granting review in a case resulting in more than $100 million in liability); *see also* Petition 13-15.  As to the second prong, the Court of Appeals applies a "flexible" standard, *Hevesi*, 366 F.3d at 76 n.4, under which a petitioner need only make a "substantial showing" that the decision below is "questionable," *Sumitomo Copper Litig.*, 262 F.3d at 140.  As demonstrated above, *see* pp. 6-8, *supra*, Bloomberg meets that standard.  *See also* Petition 13-23.

### C.      Plaintiffs Can Point to No Countervailing Interest Weighing Against a Stay

Bloomberg has demonstrated that the potential harm from premature class notice weighs strongly in favor of granting its Motion.  For their part, Plaintiffs can point to no countervailing interest weighing against a stay.  Bloomberg merely requests stay of the issuance of notice.  Plaintiffs cannot meaningfully predict that any stay of notice would cause delay in the proceedings where, as here, no trial date has been set.  Moreover, any alleged harm to Plaintiffs resulting from any such delay can be adequately remedied with additional monetary relief.  *See, e.g. Brown*, 2012 WL 5818300, at \*4 (no harm where plaintiffs would continue to accrue damages and interest pending appeal); *Aguayo*, 2015 WL 13344756, at \*1 (alleged continuing violations would be remedied with monetary relief).  Accordingly, a limited stay of class notice is appropriate and the Motion should be granted.

### CONCLUSION

For the foregoing reasons, Bloomberg respectfully requests that this Court grant its Motion and stay the issuance of class notice (i) until the Second Circuit makes a determination with respect to Bloomberg's Petition and (ii) should the Second Circuit grant the Petition, until the Second Circuit decides Bloomberg's appeal.

Dated: October 11, 2017

JONES DAY

By: /s/ Matthew W. Lampe
Matthew W. Lampe
Terri L. Chase
250 Vesey Street
New York, New York 10281
(212) 326-3939
mwlampe@jonesday.com
tlchase@jonesday.com

*Attorneys for Defendant*