IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ERIC MICHAEL ROSEMAN, et al.,
individually and on behalf of others similarly
situated,

        Plaintiffs,

        v.

BLOOMBERG L.P.,

        Defendant.

Case No. 14 CV 2657 (DLC) (KNF)

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR
FINAL APPROVAL OF CLASS SETTLEMENT**

By:

Dan Getman
Lesley Tse
Artemio Guerra
Meagan Rafferty
GETMAN, SWEENEY & DUNN, PLLC
260 Fair Street
Kingston, NY 12401
(845) 255-9370

*Counsel for Plaintiffs*

Terri L. Chase
Matthew W. Lampe
Kristina A. Yost
Michael Casertano
JONES DAY
250 Vesey Street
New York, New York 10281
(212) 326-3939

*Counsel for Defendant*

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................2

    I.    Procedural History .............................................................................................2

    II.   Overview of Investigation and Discovery .........................................................4

    III.  Pretrial and Trial ...............................................................................................4

    IV.  Mediation and Settlement Negotiations ...........................................................6

SUMMARY OF THE SETTLEMENT TERMS ..............................................................7

    I.    Scope of Settlement ...........................................................................................7

    II.   The Settlement Fund ..........................................................................................7

    III.  Qualified Class Members ...................................................................................8

    IV.  Allocation Formula ...........................................................................................8

    V.   Taxes ................................................................................................................10

    VI.  Releases ...........................................................................................................10

    VII. Attorneys' Fees and Litigation Costs .............................................................11

    VIII. Service Awards ..............................................................................................11

    IX.  Settlement Administrator .................................................................................12

    X.   Agreed Procedure for Final Approval of the Settlement .................................12

ARGUMENT ..................................................................................................................14

    I.    Standards Governing Final Approval ...............................................................14

    II.   All Qualified Class Members Should be Included in the Settlement ..............16

    III.  The Settlement is Fair, Reasonable, and Adequate ........................................16

          A.   *Grinnell* Factor 1: Complexity, Expense, and Likely Duration of Litigation17

          B.   *Grinnell* Factor 2: Reaction of the Class ................................................. 17

          C.   *Grinnell* Factor 3: Stage of the Proceedings............................................ 18

          D.   *Grinnell* Factors 4 and 5: Risks of Establishing Liability and Damages .. 19

          E.   *Grinnell* Factor 6: Risks of Maintaining the Class Action Through the Trial ................................................................................................................ 21

          F.   *Grinnell* Factor 7: Ability of Defendant to Withstand a Greater Judgment21

          G.   *Grinnell* Factors 8 and 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation .............................................................................................. 22

i

IV.   The Award Distribution Process Relieving of the Parties from Filing Additional Opt-In Statements Are Appropriate..........................................................................................24

CONCLUSION..........................................................................................................................25

## Table of Authorities

**Cases**

*Beckman v. KeyBank, N.A.,* 293 F.R.D. 467 (S.D.N.Y. 2013) ............................................... 18, 21

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................................... 16

*City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL
    1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F.
    App'x 73 (2d Cir. 2015) ........................................................................................................ 22

*Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL
    1948198 (S.D.N.Y. May 11, 2010) ...................................................................................... 15

*Clark v. Ecolab, Inc.,* 04 CIV. 4488 (PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27,
    2009) ..................................................................................................................................... 14

*Corte v. Fig & Olive Founders LLC*, No. 14-cv-7186(KPF), 2015 WL 12591677
    (S.D.N.Y. June 24, 2015) ..................................................................................................... 16

*Danieli v. Int'l Bus. Machines Corp.*, No. 08 CV 3688(SHS), 2009 WL 6583144
    (S.D.N.Y. Nov. 16, 2009) ..................................................................................................... 24

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................... 14, 21, 24

*Henry v. Little Mint, Inc.*, No. 12-cv-3996(CM), 2014 WL 2199427 (S.D.N.Y. May
    23, 2014) ............................................................................................................................... 15

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y.
    2000) ................................................................................................................. 18, 20, 21, 23

*In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL
    2731524 (S.D.N.Y. Apr. 26, 2016) ...................................................................................... 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL
    2230177 (S.D.N.Y. July 27, 2007) ...................................................................................... 15

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ............................ 23

*In re Top Tankers, Inc. Sec. Litig.*, 06 CIV. 13761 (CM), 2008 WL 2944620
    (S.D.N.Y. July 31, 2008) ..................................................................................................... 15

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................................... 18

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) ....................................................................... 24

*Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ........... 16, 23

*Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 (BMC), 2012 WL
    5874655 (E.D.N.Y. Nov. 20, 2012) ...................................................................16

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998) ................................14

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 CIV.4270 (PAC),
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................................................15

*Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611 (S.D.N.Y. 2012)..........................15, 23

*Torres v. Gristede's Operating Corp.,* 04-CV-3316 PAC, 2010 WL 5507892
    (S.D.N.Y. Dec. 21, 2010) aff'd, 519 Fed. Appx. 1 (2d Cir. 2013)..........................15

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993) ..........................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)..........................14, 16, 18

*Wright v. Stern*, 553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................15

**Other Authorities**

*Newberg on Class Actions et seq.* (4th ed. 2002). ........................................................................14

**Rules**

Fed. R. Civ. P. 23 ..........................................................................................................................14

## PRELIMINARY STATEMENT

The proposed settlement, which was preliminarily approved on June 26, 2018 (Dkt. 519), resolves all claims in this Class Action and Collective Action Complaint asserting claims against Defendant, Bloomberg L.P. ("Defendant" or "Bloomberg"), under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), and the California Labor Code ("CLC") alleging that Defendant failed to pay overtime to the Named Plaintiffs and all other Class Member Analytics Desk ("ADSK") Representatives working in New York and California ("Plaintiffs") (together with Bloomberg, the "Parties"). Following a settlement conference conducted by Magistrate Judge Stewart Aaron one week into the trial of this case, the Parties reached a settlement of the Plaintiffs' claims against Defendant Bloomberg L.P. for $54,500,000.00. In reaching this agreement, Bloomberg does not admit that any Class Member's liability or damages claim has merit. The Settlement Administrator has issued the Court-approved notice of the settlement to the class in accordance with the Settlement Agreement. That notice apprises Class Members of the terms of the settlement and informs each Class Member of the estimated individual amount they will receive if the settlement, including fees, costs, and service payments, is approved as requested. No class member has objected to the settlement or any of its terms.

By this motion, the Parties respectfully request that the Court grant final approval of the Settlement Agreement, including: (i) a ruling that the Agreement is final, fair, reasonable, adequate, and binding on all Qualified Class Members (as such term is defined in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Dan Getman in support of this motion ("*Getman Decl.*")); (ii) entry of the Final Approval Order and entry of Final Judgment, attached to the Joint Motion for Final Approval of Class Settlement; (iii) dismissal of this case with prejudice,

subject to the Court's retention of jurisdiction to oversee enforcement of the Settlement Agreement; (iv) an order that Defendant transfer all funds due herein to the Qualified Settlement Fund in the timeframe specified by the Settlement Agreement; (v) an order that the Settlement Administrator should distribute Settlement Checks from the Qualified Settlement Fund per the Settlement Agreement timing requirements; and (vi) an order that the amount of any Settlement Checks that remain uncashed at the end of the payout period described herein (or after the date until which any subsequent or replacement checks remain payable, whichever is later) and that are not used to fund the Errors and Omissions Fund agreed upon in the Settlement Agreement will be paid equally to the Cy Pres Recipients described herein.

Plaintiffs will respectfully request the Court's approval with respect to service awards, attorneys' fees, and costs by separate motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

Plaintiff Eric Roseman filed this suit under the FLSA and NYLL on April 14, 2014, claiming that ADSK Representatives are entitled to back overtime pay and liquidated damages. The case was originally assigned to District Judge Thomas P. Griesa, and discovery matters were assigned to Magistrate Judge Kevin N. Fox. On April 17, 2015, the Court conditionally certified the FLSA collective action. On March 22, 2016, Plaintiffs filed an amended complaint to add Plaintiff Alexander Lee as the Class Representative of the New York Class of Analytics Representatives under the NYLL and to add William Van Vleet as the Class Representative of the California Class of Analytics Representatives under the CLC. Dkt. 102. Discovery ran through June 30, 2016.   After extensive class-related and other discovery, Plaintiffs filed for class certification in September 2016, with the motion fully briefed in November 2016, and filed a

motion for partial summary judgment in September 2016, with the motion fully briefed in December 2016.  District Judge Denise Cote was assigned to the case on August 15, 2017. On September 17, 2017, the Court certified the NYLL Rule 23 Class; and on September 25, 2017, the Court certified the California Rule 23 Class. Summary Judgment was denied, and the case was set for a jury trial commencing April 16, 2018.

After 5 days of trial, the Parties were referred to Magistrate Judge Stewart D. Aaron for a settlement conference, and the Parties were able to reach an agreement through the device of a mediator's proposal, which was tentatively accepted by both sides. Following continued negotiation of terms until late in the evening, the Parties memorialized their agreement in a Term Sheet. The Court then dismissed the jury, and the Parties drafted a formal Settlement Agreement and Class Notice. Pursuant to the Term Sheet, Judge Aaron assisted the Parties with respect to finalizing certain terms and the Parties signed the Settlement Agreement on or about June 15, 2018.

The Parties moved for Preliminary Approval of the Settlement Agreement and for approval of the Class Notice on June 19, 2018 (Dkt. 513). The Court granted Preliminary Approval of the Settlement Agreement on June 26, 2018 (Dkt. 519), and the approved Settlement Administrator, Settlement Services, Inc. (SSI), issued the Class Notice to Class Members via first class mail on July 24, 2018 (Declaration of Mark Patton ("*Patton Decl.*") at ¶ 4). The period for objecting to the settlement closed on September 22, 2018, and SSI has reported as follows:

> Notices mailed and not returned as undeliverable: 1361
> Notices mailed, returned as undeliverable, successfully traced and sent to possible new address: 122
> Notices mailed, returned as undeliverable, unsuccessfully traced and sent to new address after outreach to class member: 18
> Notices mailed, returned as undeliverable, unsuccessfully traced and not re-mailed: 11
> Notices re-mailed based on new address received from class member over phone: 165

Objections Received: 0

*Patton Decl.* at ¶¶ 6-8.

## II.     Overview of Investigation and Discovery

The Parties engaged in extensive fact discovery and exchanged approximately 1,256 gigabytes of data and approximately 5,162,007 Bates-stamped documents (ranging from single-page documents to large spreadsheets). Defendant took the depositions of the three Named Plaintiffs and seven (7) Opt-in Plaintiffs. Plaintiffs took six (6) depositions, including depositions of ADSK Rep supervisors, known as Team Leaders; upper-level managers of the Analytics Department, including the current and former Global Heads of Analytics; and the Global Human Resources Manager for Bloomberg's business partnering group. Plaintiffs also took several Rule 30(b)(6) depositions of the company on all issues relevant to the case.

## III.    Pretrial and Trial

On May 27, 2015, a Collective Action Notice was sent to all putative members of the FLSA Collective Action. The opt-in period for the FLSA Collective Action closed on July 27, 2015, and ultimately 50 individuals opted in to the Collective Action in addition to Plaintiff Roseman.[1] *Getman Decl.* at ¶ 13. On December 8, 2017, a Class Action Notice was issued to all putative class members of the NYLL Class and the California Class. The Class Notice Period closed on February 9, 2018, by which point 62 individuals had timely opted out of the litigation. *Getman Decl.* at ¶ 15. The Parties then commenced pretrial preparation, which included the filing of the Joint Pretrial Order, Dkt. 402; numerous motions *in limine*, Dkts. 404, 406, 407, 408, 409, 410, 412, 416, 423; the Parties' respective trial briefs, Dkts. 413, 417; the Parties' respective requests to charge, Dkts.

---

[1] 20 opt-ins subsequently withdrew their consent to sue forms, were excluded from the case by the Court, or were found to be outside of the statute of limitations, leaving 30 opt-ins remaining in the Collective Action in addition to Plaintiff Roseman. *Getman Decl.* at ¶ 14.

415, 418, 419, 420, 421; and the Parties' respective proposed *voir dire* questions, Dkts. 403, 422.

Throughout this process, by way of stipulation and rulings from the Court on numerous motions

sought by Plaintiffs and Defendant, the Parties and the Court were able to successfully narrow the

issues to be tried before the jury to: (1) Whether Bloomberg had met its burden to prove that the

Administrative Exemption applied to the Analytics Representatives; (2) How many hours, if any,

Plaintiffs proved that Analytics Representatives worked outside Bloomberg's office facilities; and

(3) Whether Bloomberg had met its burden to prove that there was a clear, mutual understanding

between it and the Analytics Representatives that Analytics Representatives' salary was meant to

compensate for all hours worked. *See* Mot. Hr'g Tr. (Feb. 22, 2018); Mot. Hr'g Tr. (Mar. 28,

2018). If the jury had returned a verdict in favor of the Plaintiffs on the first issue, the Court would

have used the jury's responses on the second and third issues, along with the Parties' post-trial

briefing, to calculate damages owed to Plaintiffs. *See* Mot. Hr'g Tr. (Feb. 22, 2018).

The Court held a final pretrial conference on March 28, 2018, and a jury was selected on

April 12, 2018. On April 16, 2018, the Parties commenced trial before Judge Cote and a seven-

member jury. The jury heard evidence through live and deposition testimony from 16 witnesses

over the course of five days, and the Plaintiffs rested their case-in-chief at the end of the trial day

on Friday, April 20, 2018. *Getman Decl.* at ¶ 19. Although a settlement conference had been

scheduled for the afternoon of Friday, April 20, 2018, before Judge Stewart Aaron, the Parties

were prepared to return on Monday, April 23, 2018, for a second week of trial to try the remainder

of Bloomberg's case-in-chief, Plaintiffs' rebuttal, to attend the charge conference, to present their

respective closing arguments to the jury, and to await the jury's verdict. *Getman Decl.* at ¶ 21.

IV.     **Mediation and Settlement Negotiations**

The Parties participated in a formal private mediation before the Retired Magistrate Judge Diane Welsh (JAMS) on November 30, 2017, at the conclusion of which the Parties had not reached agreement. The Parties recognized that settlement negotiations could be more productive at the close of the Class Notice Period, once the actual size of the Class was known. Once the Notice Period closed, and as the Parties prepared for trial, they continued to engage in good faith negotiations through Judge Welsh, but the Parties were not able to reach any agreement. After trial commenced, this Court again encouraged, and then ordered the Parties to resume good faith settlement negotiations, which they did through Judge Welsh. When it became clear that the Parties would be unable to reach any agreement through Judge Welsh, the Parties notified this Court, and Plaintiffs requested the Court refer the Parties to a Magistrate Judge in the district. *Getman Decl.* at ¶ 20.

This Court referred the Parties to Judge Stewart Aaron for a settlement conference on the afternoon of April 20, 2018, which was after a full week of trial and after the Plaintiffs had rested their case-in-chief. Judge Aaron was able to bring the Parties into agreement on the material terms of a settlement, which resulted in the signing of a Term Sheet late in the evening on April 20, 2018, which the Parties affirmed on the record. The Parties then presented the Term Sheet to this Court on the morning of Monday, April 23, 2018, and this Court dismissed the jury and directed the Parties to file a motion for preliminary settlement approval by June 15, 2018, which deadline was subsequently extended to June 19, 2018 (*see* Dkt. 510). The Parties cooperated in good faith to use the Term Sheet, as well as Judge Aaron's assistance resolving several remaining issues, to draft the Settlement Agreement and the Class Notice of Settlement, which was preliminarily approved on June 26, 2018 (Dkt. 519), and for which the Parties now seek Final Approval.

## SUMMARY OF THE SETTLEMENT TERMS

### I.  Scope of Settlement

The Settlement Agreement resolves the claims of all Qualified Class Members, which is defined in the Settlement Agreement to include the Named and Opt-In Plaintiffs, and all NYLL and California Class Members (described further in Section III, below) who were permitted to but did not opt out of the Litigation. *Getman Decl.* at ¶ 27. The exclusive lists of Qualified Class Members by employment ID numbers, as agreed upon by the Parties under the Settlement Agreement, are attached to the Settlement Agreement as Exhibits F and G.

### II.  The Settlement Fund

The Settlement Agreement creates a fund of $54,500,000.00 ("Settlement Amount") to settle this action (the "Fund"). Settlement Agreement ("S.A.") at ¶ 2.31. From this fund, costs, service payments, and attorneys' fees are to be deducted, with the Net Settlement Amount to be distributed to the Qualified Class Members. The fund will be distributed based on a Settlement Formula, described below. *See* S.A. at ¶ 5.4. Any unclaimed funds after the Payout Period ends (on or about one year after the Settlement Checks are first mailed by the Settlement Administrator, as further defined in Section 2.23 of the Settlement Agreement) first will be used to fund an Errors and Omissions Fund as necessary to correct any underpayments, and then will be distributed equally to the two approved Cy Pres Recipients—Make the Road New York and The Consortium for Worker Education. S.A. ¶¶ 2.9, 5.8. Under the Settlement Agreement, Class Counsel are permitted to seek an award of fees of up to 25% of the Settlement Amount, plus costs. S.A. ¶ 5.2. Also under the Settlement Agreement, Plaintiffs may seek, and Bloomberg will not oppose, Service Awards, in addition to their respective Settlement Shares, for Named Plaintiffs, Trial Witnesses, and Non-Testifying Witnesses. S.A. ¶ 5.3. Plaintiffs' briefing in support of attorneys'

fees and costs, and in support of Service Awards, is being submitted separately but contemporaneously with this brief.

## III.    Qualified Class Members

Under the terms of the Settlement Agreement, "Qualified Class Members" are all Named Plaintiffs, Opt-In Plaintiffs, NYLL Class Members, and California Class Members who the Parties agreed were Class Members at the time the Settlement Agreement was executed, and whose UUID and Employee ID numbers are listed in Exhibits F and G, attached to the Settlement Agreement.[2] S.A. ¶¶ 2.3, 2.21. "NYLL Class Members" include all New York-based employees who worked as Analytics Representatives in Bloomberg's Analytics Department during the period from April 14, 2008, through the execution of the Settlement Agreement ("Execution Date"), with annualized compensation of less than $100,000 through 2016, and less than $134,004 from 2017 through the Execution Date. S.A. ¶¶ 2.8, 2.21. "California Class Members" include all San Francisco-based employees who worked as Analytics Representatives in Bloomberg's Analytics Department during the period from December 3, 2011, through the Execution Date, with annualized compensation of less than $100,000 through 2016, and less than $134,004 from 2017 through the Execution Date. S.A. ¶¶ 2.3, 2.8.

## IV.    Allocation Formula

The allocation formula is set forth in Exhibit H to the Settlement Agreement. The formula accurately reflects Class Counsel's view of the relative value of each Class Members' claim.[3] After

---

[2] Following a decision by the Court enforcing Plaintiff Roseman's release of his state-law claims, the Parties agreed that individuals who had released their NYLL and/or CLC claims against Bloomberg were not New York or California Class Members.

[3] All components of the formula, including weekly overtime hours, FLSA overtime period, FLSA overtime earnings, New York overtime period, NY overtime earnings, California overtime period, California overtime earnings, and damages after December 20, 2017, are for purposes of

attorneys' fees and costs (including settlement administration costs) and Service Awards (*see infra.* Sections VII, VIII) are deducted from the Settlement Amount, the remaining funds (the "Net Settlement Amount") will be allocated among the Qualified Class Members on a pro rata basis.

Qualified Class Members' individual Settlement Shares are calculated based on their recorded in-office hours ("Badge Hours") plus 5 hours per week, and their individual payroll records (salary plus bonus). Weekly overtime hours are the Class Member's weekly Badge Hours plus 5 hours minus 40. FLSA overtime is calculated for the period of three years prior to the filing of the consent to sue by each Named or Opt-In Plaintiff. Claimed FLSA overtime earnings equal the Plaintiff's weekly overtime hours multiplied by the overtime rate[4] each week, plus an equal amount of liquidated damages.

New York overtime is calculated for the period of April 14, 2008 (six years prior to the filing of complaint) through December 30, 2017 for Qualified NYLL Class Members. Claimed New York overtime earnings equal the NYLL Class Member's overtime hours multiplied by the overtime rate each week, plus applicable liquidated damages and prejudgment interest.

California overtime is calculated for the period of December 3, 2011 (four years from when the California claims were added) through December 30, 2017 for Qualified California Class Members. Claimed California overtime earnings equal the California Class Member's overtime hours multiplied by the overtime rate each week, plus applicable daily overtime and double-time overtime (adjusted to avoid double counting of daily and weekly overtime hours), plus applicable

---

the settlement formula only. By agreeing to the settlement formula for the purposes of settlement, Bloomberg does not admit that any Class Member's liability or damages claim has merit. S.A. ¶ 5.4(D)(5)(a).

[4] The overtime rate is the regular rate for salary multiplied by 1.5 plus the regular rate for bonus multiplied by one half (.5). See S.A. at Ex. H, ¶ 8.

prejudgment interest, plus applicable waiting period damages.

Litigation risk adjustments are made to Qualified Class Members' claimed damages to account for differences in state law on issues such as the Fluctuating Work Week (FWW). For Qualified Class Members employed after December 30, 2017, claimed damages have been extrapolated using the 2017 class-wide averages of New York and California weekly class damages, respectively. After applying the litigation risk adjustment, each Qualified Class Member's individual claimed damages are summed, excluding duplicative tallies, and prorated to the Net Settlement Amount for distribution as Settlement Shares. Pursuant to the Settlement Agreement, Class Counsel performed the allocation calculations based upon the data sets provided in discovery, Bloomberg reviewed the allocation calculations and provided proposed revisions, and the Parties agreed on the allocation calculations pending Final Approval.

## V.   Taxes

The Parties have agreed that 50% of each Qualified Class Member's Settlement Share will be deemed wages ("Wage Portion"), subject to W-2 (and equivalent state form) reporting, and distributed net of the employee portion of all applicable tax deductions and withholdings. S.A. ¶ 5.5(B)(1). Bloomberg will pay the Employer Portion Payroll Taxes with respect to the Wage Portion of the Settlement Payments. *Id*. The other 50% of each Qualified Class Member's Settlement Share, as well as any Service Awards, will be deemed non-wage income and will be reported on an IRS Form 1099 and equivalent state form. *Id*. Any attorneys' costs and fees awarded to Class Counsel will be reported solely to counsel on an IRS Form 1099. S.A. ¶ 5.2.

## VI.   Releases

The Settlement Agreement provides that upon Final Approval of the Settlement, each Qualified Class Member will release Bloomberg and/or its general partner, Bloomberg Inc., as

well their present and former owners, partners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, divisions, subsidiaries, affiliates, benefits plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under, or in concert with any of them, including any party that was or could have been named as a defendant in the Litigation (collectively, the "Released Parties"), from all claims that are based upon, arise out of, or relate to the facts, acts, transactions, occurrences, events, or omissions alleged in the litigation and that arose during the time that such individual was employed by Bloomberg as an Analytics Representative until the date the Settlement Agreement was executed. S.A. ¶ 10.1.

## VII.   Attorneys' Fees and Litigation Costs

The Settlement Agreement provides that Class Counsel may seek reimbursement from the Fund for attorneys' fees of up to 25% of the Fund, plus actual litigation costs incurred, to compensate them for all of the time they spent litigating this case without payment to date. S.A. ¶ 5.2. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel is filing separate briefing in support of final approval of attorneys' fees and expenses. The Settlement Agreement is not contingent on the amount of attorneys' fees and costs ultimately awarded by the Court, and any fees not awarded will be distributed to the Class in the Qualified Class Members' respective Settlement Shares.

## VIII.   Service Awards

In addition to their respective, individual, pro rata Settlement Shares, Class Counsel seeks Service Awards for the Named Plaintiffs and select Opt-In Plaintiffs in recognition of the services they rendered on behalf of the Class. S.A. ¶ 5.3. The Settlement Agreement provides that Class Counsel may seek up to $25,000 for each of the three (3) Named Plaintiffs, up to $10,000 for each of the four (4) Trial Witnesses who testified at trial in addition to the Named Plaintiffs, and up to

$5,000 for each of the Non-Testifying Witnesses who were listed on Plaintiffs' final trial witness list, and were deposed in this case and/or were fully participatory and prepared to testify at trial if called. Class Counsel are separately filing briefing in support of final approval of Service Awards in the amount sought.

## IX.    Settlement Administrator

Under the Settlement Agreement, the Parties agreed to name SSI as the Settlement Administrator. The Court approved SSI as the Settlement Administrator in its order granting Preliminary Approval (*see* Dkt. 519 at ¶ 11). Class Counsel agrees to pay all fees and expenses of the Settlement Administrator from the Fund as litigation expenses, as approved by this Court, but both Parties have equal access to the Settlement Administrator. S.A. ¶ 3.1. SSI has successfully fulfilled its duties to date under the Settlement Agreement. Going forward, SSI will establish and administer the Qualified Settlement Fund (QSF), calculate and withhold Income Withholding and Employee Portion Payroll Taxes from the wage portion of payments made to Qualified Class Members, remit withheld taxes to the Taxing Authorities, calculate Employer Portion Payroll Taxes, collect from Bloomberg and remit to the Taxing Authorities Employer Portion Payroll Taxes, prepare and file all tax returns as necessary for the Settlement and the QSF, prepare one or more declarations regarding the claims administration process, fulfill all tax reporting requirements, and distribute the Settlement Checks. S.A. ¶ 3.2. SSI expects to invoice Class Counsel for its work in this case in the amount of $17,000.00.[5]

## X.    Agreed Procedure for Final Approval of the Settlement

As agreed under the Settlement Agreement, the Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

---

[5] Plaintiffs have included this amount in their application for reimbursement of costs.

1.  If the Court grants the Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment for Dismissal. S.A. ¶ 8.2.

2.  The Effective Date of the Settlement Agreement shall be when the Court has granted Final Approval and either (a) upon timely appeals, the United States Court of Appeals for the Second Circuit and/or the United States Supreme Court, has declined to consider, affirmed, or otherwise approved the Court's Final Approval Order and the applicable date for seeking further appellate review has passed; or (b) the applicable date for seeking appellate review of Final Approval has passed (and cannot be extended) without timely appeal or request for review having been made. S.A. ¶ 2.11. For example, if the Court were to grant final approval to the Settlement and enter final judgment on the day following the final approval hearing, and no timely appeal were to be filed, the Effective Date would be December 15, 2018.

3.  At least eight (8) days preceding the Effective Date, the Settlement Administrator will provide Bloomberg a calculation of the Employer Portion Payroll Taxes due with respect to the Wage Portions of the Settlement Payments. *See* S.A. ¶ 5.1, 5.5(B)(1).

4.  No later than two (2) days after the Effective Date, the Settlement Administrator will revise the calculation of the Employer Portion Payroll Taxes to take into account any reasonable comments delivered by Bloomberg. *See* S.A. ¶ 5.1, 5.5(B)(1).

5.  No later than seven (7) days after the Effective Date, Bloomberg will pay the Settlement Amount into the Qualified Settlement Fund, plus an amount equal to the Employer Portion Payroll Taxes determined pursuant to the Settlement Agreement Section 5.5(b)(1). S.A. ¶¶ 5.1, 5.5(B)(1).

6.  Within fourteen (14) days after the Effective Date, the Settlement Administrator will (a) mail the Settlement Checks and Service Awards; and (b) issue payment of Class Counsel's attorneys' fees and costs from the QSF to Class Counsel. S.A. ¶¶ 5.7.1.(A), 5.7.2.

7.  Within thirty (30) days following the Effective Date, Class Counsel will pay the Settlement Administrator's fees, which may be deducted from Class Counsel's expense reimbursement payment at Class Counsel's option. S.A. ¶ 5.7.3.

8.  The Payout Period will extend for one (1) year following the date the Settlement Administrator first mails the Settlement Checks, or up to fourteen (14) days thereafter to the extent any replacement or subsequent Settlement Checks remain payable after one (1) year from the date the Settlement Administrator first mails the Settlement Checks. S.A. ¶ 2.23.

9.  Following the end of the Payout Period (or after the date until which any subsequent or replacement check remains payable), the Settlement Administrator will pay the amount of any Settlement Checks that remain uncashed first to fund underpayments from the Errors and Omissions Fund (to the extent the Parties mutually agree to such payment or the to the extent the Court directs such payment upon motion by any Party), and then any remaining funds equally to the two Cy Pres Recipients. S.A. ¶ 5.8.

**ARGUMENT**

**I.      Standards Governing Final Approval**

Because this is a class action, and also because it involves FLSA claims, the Court must

approve the Settlement. The procedure for approval includes three distinct steps, of which the first

two have already been completed here:

1.   Preliminary approval of the proposed settlement after submission to the Court of a written
     motion for preliminary approval, including preliminary approval of any agreed settlement
     classes;

2.   Dissemination of mailed and/or published notice of settlement to all affected Class
     Members advising them of the settlement and their right to object; and

3.   A final settlement approval hearing at which Class Members may be heard regarding the
     settlement, and at which argument concerning the fairness, adequacy, and reasonableness
     of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

("*Newberg*"), §§ 13.1, *et seq.* (4th ed. 2002). This process safeguards Class Members' procedural

due process rights and enables the Court to fulfill its role as the guardian of class interests.

The approval of a proposed class action settlement is a matter of discretion for the trial

court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). In

exercising this discretion, courts should give "proper deference to the private consensual decision

of the parties." *Clark v. Ecolab, Inc.,* 04 CIV. 4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y.

Nov. 27, 2009) (citations omitted).

"Fairness is determined upon review of both the terms of the settlement agreement and the

negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174,

184 (W.D.N.Y. 2005) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.

2005)). Courts examine procedural and substantive fairness in light of the "strong judicial policy

favoring settlements" of class action suits. *Visa,* 396 F.3d at 116. "A presumption of fairness,

14

adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quotations omitted); *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012); *see also Henry v. Little Mint, Inc.*, No. 12-cv-3996(CM), 2014 WL 2199427, at *6 (S.D.N.Y. May 23, 2014) (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008)) (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Morris,* 859 F. Supp. 2d at 618 (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)); *In re Top Tankers, Inc. Sec. Litig.*, 06 CIV. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008) (same). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation[.]" *Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). Ultimately, "[t]he Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Torres v. Gristede's Operating Corp.,* 04-CV-3316 PAC, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 Fed. Appx. 1 (2d Cir. 2013); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 06 CIV.4270 (PAC), 2009 WL 5851465, at *4 (S.D.N.Y. Mar. 31, 2009) (same). Moreover, "[a] settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" *Corte v. Fig & Olive Founders LLC*, No. 14-cv-7186(KPF), 2015

WL 12591677, at *2 (S.D.N.Y. June 24, 2015) (quoting *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011)).

**II.      All Qualified Class Members Should be Included in the Settlement**

The Court previously certified classes under New York and California law in this matter (Dkt. 307, 308) and authorized the issuance of a Class Action Notice to be sent to those individuals. In December 2017, all such class members were issued notice of the case and the right to opt out. Thus, all Class Members who did not opt out (defined in the Settlement Agreement as Qualified Class Members) should be covered by the terms of the Agreement. *See Wal-Mart Stores, Inc.*, 396 F.3d at 114 (noting that class members need not be given a second opportunity to opt out after the terms of a settlement are announced).

**III.     The Settlement is Fair, Reasonable, and Adequate**

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 (BMC), 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012). The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

16

### A. *Grinnell* Factor 1: Complexity, Expense, and Likely Duration of Litigation

As the Court is well aware, this case has been zealously litigated on both sides from the beginning, and proceeded through the Plaintiffs' case-in-chief at trial. *See Getman Decl.* at ¶¶ 16-21, 75-76. Although both Parties already had expended significant time, expense, and effort throughout the course of the litigation at the time they reached a preliminary agreement through mediation with Judge Aaron, the Parties likely were to expend even greater time and effort and incur even greater expense were the litigation to continue. To complete the trial, Bloomberg would have to put on its case-in-chief, the Court would have to hold the Charge Conference, the Parties would have to present their final arguments to the jury, and the jury would have to deliberate and issue its verdict. If the jury had reached a verdict in favor of the class, the Court would have had to decide damages, the complexity of which likely would have required extensive briefing and additional argument from both sides. Additionally, depending on the jury verdict and any potential additional decisions by the Court, either Plaintiffs or Bloomberg likely would have sought appeal on various issues, which would have added further expense, complexity, and time to the litigation. Any remand and retrial would have further extended the litigation, potentially for years. In sum, although this litigation had progressed significantly, and was midway through trial at the time the Parties reached a preliminary settlement, the remainder of the trial, the complex and nuanced post-trial briefing, and likely appeals, much of which would be labor-intensive and expensive for both Parties, could extend this litigation for years. Accordingly, this factor weighs in favor of final approval.

### B. *Grinnell* Factor 2: Reaction of the Class

The reaction of the class has been overwhelmingly positive, with no class members filing an objection. *Getman Decl.* at ¶ 28. The calls that Class Counsel has received from Class Members

17

regarding the settlement have been mostly positive. *Id.* at ¶ 29. In fact 12 Class Members have provided declarations in support of the requested Service Awards and that also express their satisfaction with the settlement. *See* Ex. 10 to *Getman Decl.* "While the reaction of a class to a settlement is always important, it is [] especially telling here since the Class is composed of sophisticated parties" who provided technical support to Bloomberg's customers by answering questions about the Bloomberg Terminal. *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *8 (S.D.N.Y. Apr. 26, 2016). The absence of any objections further supports a finding that the settlement is fair. *Id.*; *Wal-Mart Stores*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

### C. *Grinnell* Factor 3: Stage of the Proceedings

For the third factor, "[t]he pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (citation omitted)*; see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (internal quotations omitted).

In this case, the proceedings were sufficiently advanced and undeniably adversarial. Both Parties were ready and willing to proceed through the completion of trial, and in fact did continue the litigation through a full week of trial. *Getman Decl.* at ¶¶ 19, 21. Per the Court's Order, the Parties re-engaged in good faith settlement negotiations throughout the week of the trial, and when they had reached a stalemate with their mediator, the Parties informed the Court and asked the

Court for a referral to a Magistrate Judge with the hope that this Court could provide the Magistrate Judge with the necessary insight to assist the Parties in coming to a resolution. At no point were the proceedings "designed to justify a settlement"; indeed, only with the assistance of this Court and Judge Aaron were the Parties able to reach a settlement at all. Accordingly, this factor weighs in favor of final approval.

### D. *Grinnell* Factors 4 and 5: Risks of Establishing Liability and Damages

Both Plaintiffs and Bloomberg vigorously contend that they have a strong case on the merits of the threshold liability question, with both Parties ready and willing to proceed through the completion of a trial. The Parties recognize the risks they respectively face, however, given the uncertainty of the litigation process. Moreover, while Plaintiffs believe their case is strong on the merits, Plaintiffs also believe their recovery is subject to considerable risk as to the remaining questions on damages, namely, the number of hours Plaintiffs worked outside of the office; whether there was a clear, mutual understanding that the Plaintiffs' salary was meant to cover all hours worked; and substantial issues would remain with respect to the calculation of damages, which would require findings by the Court as to how to treat errors and anomalies in the Badge data and whether extrapolations could be used in that process. Meanwhile, Bloomberg believes that it had strong chances of prevailing on its exemption and other defenses at trial, which could have resulted in the class obtaining no damages at all after years of litigation. In addition, even if Plaintiffs had prevailed at trial, Bloomberg likely would have appealed the Court's class certification decisions, the decision to treat Badge Hours as work hours, and various other merits decisions, which would have placed any recovery at trial at some risk of reversal.

In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re*

*Austrian*, 80 F. Supp. 2d at 177 (quotations omitted). While Plaintiffs believe that their claims are meritorious and class-wide damages provable, Class Counsel are experienced and realistic, and understand that the resolution of these issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. Moreover, the two issues upon which Plaintiffs believe they bore the most risk would have a significant impact on the amount Plaintiffs would be able to recover even if they were to prevail with respect to liability. For example, were Plaintiffs ultimately unsuccessful on the fluctuating workweek ("FWW") issue of whether there was a clear, mutual understanding that Plaintiffs' salary was meant to cover all hours worked, Plaintiffs believe that it would mean a reduction in their recovery by almost 80%. *Getman Decl.* at ¶ 45.

Also risky is the issue of the weekly number of hours Plaintiffs worked outside the office. Plaintiffs calculate that the difference in recovery between a jury finding Plaintiffs worked 0 hours per week outside the office, and a jury finding Plaintiffs worked 10 hours per week outside the office to be about $92,297,000, using the traditional time and one half method. *Getman Decl.* at ¶ 46. Defendant also had additional issues with respect to hours worked that it expressed it would press on appeal, namely the Court's rulings on badge hours constituting time records of work and the determination of damages on a class basis. *Id.*

This means that even if Plaintiffs were successful on liability and FWW, they believe there still would be a $92,297,000 range of recovery that would hinge on the jury's verdict with respect to the number of hours Plaintiffs worked outside the office. While Plaintiffs believe they might have received a verdict that the Plaintiffs worked 10 hours per week outside the office, on average, the risk that a jury could have found that they worked 5 or fewer than 5 hours was high, and given the effect it would have on the total recovery of the Class, the settlement properly considers that

risk. Moreover, Bloomberg believes that Plaintiffs faced significant risks that the jury would have found that Bloomberg prevailed on its FWW defense and that Plaintiffs could not carry their burden of proving any hours of work outside the office on a class wide basis. If Plaintiffs lost their FWW charge, they calculate their class-wide damages at $29,688,000 at 0 hours outside of the office and $45,817,000 at 5 hours outside the office. In addition, the prospect of an appeal by Bloomberg as to damages and other issues means that any recovery would be speculative and potentially delayed for some years down the road. A reversal of that ruling would have resulted in a retrial and a renewed motion to decertify the classes, leading to additional risks in establishing liability and damages.

"Settlement eliminates the risk, expense, and delay inherent in the litigation process." *Beckman*, 293 F.R.D. at 476. The risks of establishing liability and damages factors weigh heavily in favor of final approval.

### E.  *Grinnell* **Factor 6: Risks of Maintaining the Class Action Through the Trial**

Although Plaintiffs are confident that they would have maintained class certification through the close of the trial, a jury could have failed to reach a class verdict on the hours worked, which also could have led to decertification. Moreover, Bloomberg likely would have appealed the Court's rulings granting certification and denying decertification, and Bloomberg contends there was a litigation risk that such rulings would be overturned on appeal. Thus, this factor also weighs in favor of final approval.

### F.  *Grinnell* **Factor 7: Ability of Defendant to Withstand a Greater Judgment**

Even if the Defendant can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Counsel did not calculate any

litigation risk discount for inability to collect. Thus, Bloomberg's ability to pay more did not factor into the settlement terms or amount. This factor does not hinder this Court from granting final approval. *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). ("Courts, however, generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement.").

### G. *Grinnell* Factors 8 and 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of All the Attendant Risks of Litigation

The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. As described in the Getman Declaration, Getman, Sweeney & Dunn ("GSD") engages in a rigorous and highly complex determination of the fair settlement value of all litigation prior to mediation.[6] Class Counsel only will recommend a settlement as fair when we have engaged in this exhaustive analysis of litigation risk for each claim and sub-part of each claim, determining thereby the fair settlement value for each Class Member. Here, Plaintiffs continually updated and performed this analysis for each class member and on aggregate basis through trial and during the final mediation before Magistrate Aaron, comparing the various settlement offers and counter-offers to this exhaustive risk assessment.

Without disclosing Plaintiffs' proprietary risk assessments, Plaintiffs assert that the $54.5M settlement amount represents 184% of a recovery based on a finding that the FWW rate

---

[6] In simple terms, Fair Settlement Value is determined by measuring damages accurately and multiplying the chance of success by such damages, then factoring in the time value of money. Thus a settlement of a $10,000 claim with a 65% chance of success would have an FSV of $6,500 discounted by the difference in the expected period of payouts with a settlement versus trial and appeals.

applies and Class Members worked 0 additional hours; 119% based on a finding that the FWW rate applies and that Class Members worked 5 additional hours; 85% based on finding that the FWW rate applies and that Class Members worked 10 additional hours; and 34% of damages based on a finding that the FWW does not apply and Class Members worked 10 additional hours, the latter of which Class Counsel considers Plaintiffs' best reasonable outcome. These numbers do not account for lodestar fees, which, at approximately $4,081,901.00, would not materially affect the calculation. The time value of money makes the settlement more valuable, especially given the likelihood of appeal.

For the Courts, "[t]he determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178; *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)). "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Morris,* 859 F. Supp. 2d at 621 (citing cases) "Moreover, when settlement assures immediate payment of substantial amounts to Class Members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Johnson,* 2011 WL 4357376 at *12 (citations omitted).

Class Counsel do not believe they can ethically recommend a settlement as fair without engaging in a complex mathematical calculation of discounts for each aspect of each claim's risk of loss times its value, and thus they always perform such calculations in providing an opinion as to the fairness of any settlement. Here, each Class Member will receive payment that factors in their respective Badge Hours, plus 5 hours worked outside the office each week. As explained in

detail above, the actual amount that each Class Member will receive reflects a careful balancing of Class Counsel's assessment of the strengths of their underlying claims and the risks that their claims would not ultimately prevail. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, Class Counsel considers the Settlement Amount to be reasonable and believe it to be in the best interest of the Class.

Accordingly, all of the *Grinnell* factors weigh in favor of granting Final Approval of the settlement. Because the settlement is "fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000), the Court should grant Final Approval.

## IV. The Award Distribution Process Relieving of the Parties from Filing Additional Opt-In Statements Are Appropriate

Pursuant to the order granting Preliminary Approval of the Settlement, SSI mailed the Class Notice to the last known address of each Class Member. *Patton Decl.* at ¶¶ 3-4. SSI then took all reasonable steps to obtain the correct address of any Class Member for whom a Class Notice was returned as undeliverable and re-sent the Class Notice to the best addresses available. *Id.* at ¶¶ 6-7. Class Counsel supplemented these measures by conducting additional skip traces for new addresses for all undeliverable notices.

SSI will send each Class Member their Settlement Check to the best addresses available within fourteen (14) days of the Settlement Effective Date. S.A. ¶ 5.7.1.(A). Such notice plan and award distribution process are "reasonable method[s] calculated to reach all members of the Class who would be bound by the Settlement" and should be approved by the Court. *See Danieli v. Int'l Bus. Machines Corp.*, No. 08 CV 3688(SHS), 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan for notice in which claims administrator would distribute notice to class members by First Class U.S. Mail as a reasonable method calculated to reach all members of the class who

would be bound by the settlement). For the few remaining individuals who have not been located, there is a year during which they can yet claim their funds. Additionally, Class Counsel expects to continue seeking these individuals before the money is delivered to Cy Pres designees.

Likewise, the Court should approve the Parties' request that the opt-in acknowledgments on the back of the Settlement Checks be deemed filed with the Court at the time each Qualified Class Member signs, endorses, deposits, cashes, or negotiates their Settlement Check. This approach conserves the resources of the Parties and the Court by avoiding having to file up to 1500 individual opt-in acknowledgments with the Court, and thus should be approved.

## CONCLUSION

For all the forgoing reasons, the Parties respectfully request the Court grant final approval of the Settlement Agreement, including: (i) a ruling that the Agreement is final, fair, reasonable, adequate, and binding on all Qualified Class Members (as such term is defined in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Dan Getman in support of this motion ("*Getman Decl.*")); (ii) entry of the Final Approval Order and entry of Final Judgment, attached to the Joint Motion for Final Approval of Class Settlement; (iii) dismissal of this case with prejudice, subject to the Court's retention of jurisdiction to oversee enforcement of the Settlement Agreement; (iv) an order that Defendant transfer all funds due herein to the Qualified Settlement Fund in the timeframe specified by the Settlement Agreement; (v) an order that the Settlement Administrator should distribute Settlement Checks from the Qualified Settlement Fund per the Settlement Agreement timing requirements; and (vi) an order that the amount of any Settlement Checks that remain uncashed at the end of the payout period described herein (or after the date until which any subsequent or replacement checks remain payable, whichever is later) and that are not used to fund the Errors and Omissions Fund agreed upon in the Settlement Agreement will be

paid equally to the Cy Pres Recipients described herein.

Dated: October 5, 2018

Respectfully Submitted,

*/s/ Dan Getman*
GETMAN, SWEENEY & DUNN, PLLC
Dan Getman
Lesley Tse
Artemio Guerra
Meagan Rafferty
260 Fair Street
Kingston, NY 12401
(845) 255-9370
dgetman@getmansweeney.com

*Counsel for Plaintiffs*

*/s/ Matthew W. Lampe*
JONES DAY
Matthew W. Lampe
Terri L. Chase
Kristina A. Yost
Michael Casertano
250 Vesey Street
New York, New York 10281
(212) 326-3939
mwlampe@jonesday.com

*Counsel for Defendant*