IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ERIC MICHAEL ROSEMAN, et al.,
individually and on behalf of others similarly
situated,

        Plaintiffs,

        v.

BLOOMBERG L.P.,

        Defendant.

Case No. 14 CV 2657 (DLC)

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## FINAL APPROVAL OF CLASS COUNSEL'S FEES AND COSTS

By:

Dan Getman
Lesley Tse
Artemio Guerra
Meagan Rafferty
GETMAN, SWEENEY & DUNN, PLLC
260 Fair Street
Kingston, NY 12401
(845) 255-9370

*Counsel for Plaintiffs*

## Table of Contents

**Table of Authorities** ...................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND..........................................................1

ARGUMENT.......................................................................................................................1

   I. The Settlement Agreement's Permission for Class Counsel to Seek Attorneys' Fees Up To 25% of the Settlement Fund and Reimbursement of Reasonable Litigation Costs is Fair ......1

     A.   Fees in the Amount of 25% of the Settlement Fund are Reasonable ...........................3

     B.   The Court Should Evaluate the Settlement Agreement's Fee Provision Using the Percentage of the Fund Method..................................................................................4

     C.   The Settlement Agreement's Provision of Fees at 25% of the Settlement Fund is Reasonable ....................................................................................................................8

     D.   The Lodestar Crosscheck Further Supports Class Counsel's Requested Fees............19

CONCLUSION...................................................................................................................25

# Table of Authorities

## Cases

*A.H. Phillips v. Walling,* 324 U.S. 490 (1945) ............................................................................2

*Amador v. Morgan Stanley & Co., LLC,* No. 11-cv-4326 (S.D.N.Y. Dec. 19, 2014) .................18

*Anwar v. Fairfield Greenwich Ltd.*, No 09-cv-118, 2012 WL 1981505 (S.D.N.Y.
June 1, 2012) ........................................................................................................................14

*Arbor Hill Concerned Citizens Neighb'd Ass'n v. Cty. of Albany & Albany Cty. Bd.
of Elections,* 522 F.3d 182 (2d Cir. 2008) ............................................................................7

*Asare v. Change Grp. of N.Y., Inc.*, No. 12-cv-3371, 2013 WL 6144764 (S.D.N.Y.
Nov. 18, 2013) ......................................................................................................................13

*Asoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ..................................9

*Ayers, et al. v. SGS, et al.*, 03 Civ 9078 (S.D.N.Y. Sept. 9, 2008) .............................................24

*Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ...................................................9

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. Apr. 29, 2013) ...............................passim

*Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal.
Nov. 18, 2014) ......................................................................................................................20

*Bragg v. Terrier Claims Services*, 05 Civ. 7280 (CM)(LMS), Dkt. 28 (S.D.N.Y. July
21, 2006) ...............................................................................................................................24

*Bredbenner v. Liberty Travel, Inc.*, Civ. A. Nos. 09–905 (MF), 09–1248(MF), 09–
4587(MF), 2011 WL 1344745 (D.N.J. April 8, 2011) .....................................................15, 24

*Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337
(D.N.J. Mar. 26, 2012).......................................................................................................15, 24

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, LLC*, 504 F.3d 229 (2d Cir. 2007) ............................................................................16

*Cilluffo v. Central Refrigerated Servs., Inc.,* 12 Civ. 00886-VAP-OPx, ECF 298
(C.D. Cal. April 3, 2018) ......................................................................................................14

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ...................................................11

*City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL
1883494 (S.D.N.Y. May 9, 2014) ........................................................................................16

*Clark v. Ecolab Inc.*, No. 04 Civ. 4488, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)...........7, 24

*Crosby v. Independent Living, Inc.*, 02 Civ. 8314 (SCR)(LMS), Dkt. 33 (S.D.N.Y. Aug. 16, 2006)..................................................................................................................24

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011)...........................3, 22

*deMunecas v. Bold Food, LLC*, No. 09-cv-00440(DAB), 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).........................................................................................7

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326 (1980) ....................................2

*Driscoll v. The George Washington University*, 1:12 Civ. 00690-ESH, Dkt. 98 (D. D.C. July 17, 2014)..................................................................................................24

*Enea v. Bloomberg L.P.*, No. 12-cv-4656(GBD)(FM) (S.D.N.Y. Oct. 18, 2016).........................3

*Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337 (S.D.N.Y. 2012)...................9

*Ferrick v. Spotify USA Inc.*, No. 16-CV-8412 (AJN), 2018 WL 2324076 (S.D.N.Y. May 22, 2018) ..........................................................................................................21

*Fleisher v. Phoenix Life Ins. Co.*, No. 14-cv-8714 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)...................................................................................5, 16

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005).........................................14, 18

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-cv-486, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012)..........................................................................................18

*Garcia v. Pasquareto*, 812 N.Y.S.2d 216 (App. Term. 2004) ....................................................18

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 03 Civ. 1166 (LMS), Dkt. 74 (S.D.N.Y. March 22, 2006) ....................................................................................................24

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...............................7, 11, 17, 19

*Guallpa v. N.Y. Pro Signs Inc.*, No 11-cv-3133, 2014 WL 2200393 (S.D.N.Y. May 27, 2014) ................................................................................................................23

*Hall v. ProSource Techs., LLC*, No. 11-cv-2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ..........................................................................................................18, 19

*Hart v. RCI Hosp. Holdings, Inc.* 166 Lab. Cas. P 36, 381, 2015 5577713 (S.D.N.Y. Sept. 22, 2015) ..............................................................................................................9

*Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015).......................................................................................3

*Henry v. Little Mint, Inc.*, No. 12-cv-3996(CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014 ..........................................................................................................18

*Herrington v. Waterstone Mortg. Corp.*, 3:11 Civ. 00779, ECF 157 (W.D. Wisc. Feb. 12, 2018) ............................................................................................................... 14, 24

*Herrington v. Waterstone Mortg. Corp.*, AAA No. 01 14 0000 4860 (July 5, 2017) ................ 14

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 772 F.3d 125 (2d Cir. 2014) ........................................................................................................................ 17

*In re Colgate–Palmolive Co.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014) ................................... 16, 18

*In re Elec. Carbon Prods. Antitrust Litig.,* 447 F. Supp. 2d 389 (D.N.J. 2006) ........................ 15

*In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................... 15

*In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) ......................... 16

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) ................................................... 16

*In re Oxford Health Plans, Inc. Sec. Litig.*, No. MDL–1222 (CLB) (S.D.N.Y. June 12, 2003) ............................................................................................................................. 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................................................ 17

*In re Priceline.com, Inc. Sec. Litig.*, 2007 WL 2115592 (D. Conn. July 20, 2007) .................... 17

*In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294 (3d Cir. 2005), as amended, (Feb. 25, 2005) ........................................................................................................... 7

*In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528(SAS), 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ............................................................................................................. 16

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) .................................... 5, 18

*Jackson v. Bloomberg L.P.*, No. 13-cv-2001(JPO)(GWG) (S.D.N.Y. July 14, 2016) .................. 3

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ............ 5, 9

*Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ....................................................................................................................... 3

*Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-CV-03601-HB-FM, 2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ........................................................................ 6

*Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 WL 170049 (E.D.N.Y. Jan. 19, 2012) ............................................................................................................... 15

*Llandez v. Service One Janitorial*, 04 Civ. 2210 (SCR), Dkt. 22 (S.D.N.Y. Jan. 25, 2007) ........................................................................................................................... 24

*Long v. HSBC USA Inc.*, No. 14-cv-6233 (HBP), 2016 WL 4764939 (S.D.N.Y. Sept. 13, 2016) ...................................................................................................................4

*Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................17

*Martinez-Hernandez v. Butterball*, 5-07 Civ. 00174-H (E.D.N.C. 2012).....................................24

*Matheson v. T-Bone Rest., LLC*, No. 09 CIV. 4214 DAB, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) .............................................................................................25

*McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380 (S.D.N.Y. 2017).................................................................................................................16, 17

*Morangelli v. Chemed Corp.*, 275 F.R.D. 99 (E.D.N.Y. 2011)...............................................15, 24

*Moreno v. U.S.*, 05 Civ. 142C, (Federal Court of Claims Oct. 7, 2010)......................................24

*Morocho v. Eddie*, 12 Civ. 0308 (VB) (LMS), Dkt. 100 (S.D.N.Y. Dec. 10, 2012)....................24

*Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012)..................................7

*Murphy, et al, v. Northern Dutchess Paramedics*, 7:11-cv-05661-LMS, ECF ¶ 15 (S.D.N.Y. Aug. 15, 2014) .......................................................................................14, 24

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 10 CIV. 4429-LAP, 2016 WL 3369534 (S.D.N.Y. May 2, 2016) ...................................................6

*Pena v. Le Cirque, Inc.*, No. 14 Civ. 7541 (FM), Tr. Fairness Hrg. (S.D.N.Y. Jan. 21, 2016)............................................................................................................................4, 22

*Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655 (E.D.N.Y. July 30, 2015)...............................................................................................................................3

*Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015)......................................................23

*Reiseck v. Universal Commc'ns of Miami, Inc.*, No. 06 CIV. 0777 LGS JCF, 2014 WL 5374684 (S.D.N.Y. Sept. 5, 2014) ....................................................................25

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014)..............................21

*Salazar-Martinez v. Fowler Bros. Farm*, 6:10 Civ. 06257 (W.D.N.Y. 2012) .............................24

*Sand v. Greenberg*, No. 08-cv-7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010).........................18

*Savoie v. Merchs. Bank*, 166 F.3d 456 (2d Cir. 1999) ...............................................................7

*Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .......................................................................................................5, 22

*Siler v. Landry's Seafood House-N.C., Inc.*, No. 13-cv-587(RLE), 2014 WL 2945796
(S.D.N.Y. June 30, 2014)............................................................................................18

*Smith v. Nagai*, 1:10 Civ. 08237 (PAE) (JCF), Dkt. 35 (S.D.N.Y. May 5, 2012)........................24

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y.
2003)..................................................................................................................................5

*Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)......................13

*Thornhill v. CVS Pharmacy, Inc.,* No. 13 Civ. 5507, 2014 WL 1100135 (S.D.N.Y.
March 20, 2014) ................................................................................................................3

*Tiro v. Pub. House Invs., LLC*, No. 11-cv-7679, 2013 WL 4830949 (S.D.N.Y. Sept.
10, 2013) ......................................................................................................................11, 15

*Velez v. Novartis Pharm Corp.*, No. 04-cv-09194 (CM), 2010 WL 4877852
(S.D.N.Y. Nov. 30, 2010)................................................................................................16

*Voisin v. Bartell Media Corp.*, No. 76 CIV. 3954, 1982 WL 1359 (S.D.N.Y. Dec. 2,
1982)..................................................................................................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005)........................5, 7, 17, 19

*Westerfield v. Washington Mut. Bank*, No. 06CV2817(JMA), 2009 WL 5841129
(E.D.N.Y. Oct. 8, 2009)....................................................................................................3

*Williamson v. BellSouth*, 04 Civ. 9774 (RJH)(KNF), Dkt. 27 (S.D.N.Y. July 21,
2006)................................................................................................................................24

*Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18,
2011)..................................................................................................................................3

*Young v. Cooper Cameron*, 04 Civ. 5968 (S.D.N.Y. Mar. 30, 2009).........................................24

*Yuzary v. HSBC Bank USA, N.A.*, 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y.
Oct. 2, 2013)............................................................................................................3, 4, 22

*Zhi Li Zhong v. Rockledge Bus Tour Inc.*, No. 18-CV-454 (RA), 2018 WL 3733951
(S.D.N.Y. Aug. 6, 2018)....................................................................................................4

*Zorrilla v. Carlson Rests. Inc.*, No. 14-cv-02740-AT, ECF 514 (S.D.N.Y. Apr. 9,
2018)..............................................................................................................................3, 4

## PRELIMINARY STATEMENT

Plaintiffs submit this briefing as to the fairness of Class Counsel's requested fees of 25% of the Settlement Fund and reimbursement of costs as set forth in the Parties' Settlement Agreement. Fees at 25% are below what the named Plaintiffs and the opt-ins agreed to in their retainers. No class member has objected to the requested fees, the settlement, or any of its terms. The multiplier of 3.3 over lodestar that results from a 25% fee is well within the range of those commonly awarded in wage hour class action cases. As expressed below, such multipliers comport with the underlying remedial purpose of the wage statutes by permitting contingency fee firms to undertake complex, risky and lengthy litigation on behalf of working people, while ultimately paying their bills. For the reasons set forth herein, the Court should approve the requested fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background are set forth in detail in the Parties' Memorandum in Support of Joint Motion for Final Approval of Class Settlement and for efficiency will not be repeated here.

## ARGUMENT

I.   **The Settlement Agreement's Permission for Class Counsel to Seek Attorneys' Fees Up To 25% of the Settlement Fund and Reimbursement of Reasonable Litigation Costs is Fair**

The Named Plaintiffs' retainers and the consents to sue filed in this case all call for a contingency fee of 1/3 of any recovery. Declaration of Dan Getman in support of the Joint Motion for Final Approval of Class Settlement ("*Getman Decl.*") at ¶¶ 66-67; *see also* Dkts. 46-1, 47-2. However, during settlement negotiations, Plaintiffs' counsel voluntarily reduced the amount of fees they would request from 33% to 25%. The Settlement Agreement calls for class counsel to

move the Court, at this final approval stage, for an award of attorneys' fees in the reduced amount of 25% of the Settlement Fund, which equals $13,625,000, plus reimbursement of litigation expenses, including settlement administration costs, which equal $148,884.35. Pursuant to this Court's order, Class Counsel are also submitting additional detailed time records in support of this motion, for the period of time since preliminary approval,[1] for *in camera* review. *See* Dkt. 527.

Class counsel has spent the past 54 months litigating this collective and class action from investigation to jury trial to settlement negotiations and notice to the class, without compensation of any kind. Counsel's fee has been wholly contingent upon their success. Had they lost, which was more than "possible" at the time counsel undertook the case, counsel's significant investment of time and money would have gone entirely without compensation.

The FLSA and state wage hour statutes are remedial statutes designed to protect workers and guarantee that minimum labor standards are applicable across the economy. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). Because the FLSA's enforcement depends as much or more upon private litigation as the Department of Labor, fair compensation for competent attorneys who take on risky litigation furthers the FLSA's remedial purpose. Courts have long recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 338-39 (1980).

---

[1] The time records for Edward Tuddenham are for the entire litigation, as these time records were inadvertently excluded from the previous submission.

**A. Fees in the Amount of 25% of the Settlement Fund are Reasonable**

The request for attorneys' fees equal to 25% of the Settlement Fund is within the range—indeed, on the low end of the range—approved by courts, including in this Circuit, in similar cases. *See Zorrilla v. Carlson Rests. Inc.*, No. 14-cv-02740-AT, ECF 514 ¶ 9 (S.D.N.Y. Apr. 9, 2018) (awarding attorneys' fees of one-third of the Gross Settlement Amount); *Enea v. Bloomberg L.P.*, No. 12-cv-4656(GBD)(FM), Order Granting Final Approval, ECF 143 at ¶ 10 (S.D.N.Y. Oct. 18, 2016) (approving attorneys' fees equal to 28.36% of the settlement fund); *Jackson v. Bloomberg L.P.*, No. 13-cv-2001(JPO)(GWG), Order Granting Final Approval, ECF 120 at ¶ 10 (S.D.N.Y. July 14, 2016) (approving attorneys' fees equal to 29.5% of the settlement fund); *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV 3043 PAE, 2015 WL 5577713, at *13 (S.D.N.Y. Sept. 22, 2015) (award attorneys' fees of 36.7% of settlement fund in FLSA and NYLL case); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving attorneys' fees award equal to one-third of the settlement fund in nationwide FLSA case); *Yuzary v. HSBC Bank USA, N.A.*, 12 Civ. 3693 (PGG), 2013 WL 5492998 at *11 (S.D.N.Y. Oct. 2, 2013) (approving award of 31.7% of the fund); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (one-third of settlement fund awarded for fees of $14M); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of fund in FLSA and NYLL case); *Westerfield v. Washington Mut. Bank*, No. 06CV2817(JMA), 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38,000,000 fund in nationwide overtime suit). *See also Thornhill v. CVS Pharmacy, Inc.,* No. 13 Civ. 5507, 2014 WL 1100135, at *2-3 (S.D.N.Y. March 20, 2014) ("In this Circuit, courts typically approve attorney's fees that range between 30 and 33 percent" and citing cases); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding attorneys' fees equal to 33 1/3% of

settlement fund in wage and hour class action and collecting cases finding that such an award is "consistent with the norms of class litigation in this circuit.").

In accordance with the retainer agreements providing for fees at 1/3, and case law in this district and neighboring districts, an award of $13,625,000 in attorneys' fees, which is 25% of the Settlement Fund, and reimbursement of actual litigation expenses is appropriate. *See Zhi Li Zhong v. Rockledge Bus Tour Inc.*, No. 18-CV-454 (RA), 2018 WL 3733951, at *4 (S.D.N.Y. Aug. 6, 2018) (fee of one-third of the net settlement amount is "routinely approved under the percentage method, particularly where it is pursuant to a previously negotiated retainer agreement").

## B. The Court Should Evaluate the Settlement Agreement's Fee Provision Using the Percentage of the Fund Method

There are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage-of-the-fund method—and although there is no clear consensus in this district, "courts continue to apply the percentage-of-the-fund method." *Long v. HSBC USA Inc.*, No. 14-cv-6233 (HBP), 2016 WL 4764939 (S.D.N.Y. Sept. 13, 2016) (acknowledging that courts in this district take different approaches, many of which apply the percentage-of-the-fund method) (citing *Pena v. Le Cirque, Inc.*, No. 14 Civ. 7541 (FM), Tr. Fairness Hrg. 7 (S.D.N.Y. Jan. 21, 2016) (approving award of one-third of the fund with multiplier of 4.9, and noting that the percentage award is meant to avoid discouraging able counsel from "bringing these cases by awarding more modest fees or requiring some sort of haircut")); *see also Zorrilla*, No. 14-cv-02740-AT, ECF 514 ¶ 9 ("Class Counsel are hereby awarded $6,336,666.67, or one-third of the Gross Settlement Amount, for attorneys' fees[.]"); *Yuzary*, 2013 WL 5492998 at *11 (approving award of 31.7% of the fund, yielding a multiplier of 7.6, as "nearer the higher end of the range of multipliers"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-2 (S.D.N.Y. Apr. 29, 2013) (approving award of one-third of the fund, yielding a multiplier of 6.3, as "near the

higher end of the range of multipliers that courts have allowed"); *Sewell v. Bovis Lend Lease, Inc.*, 09 Civ. 6548 (RLE), 2012 WL 1320124 at *10, *13 (S.D.N.Y. Apr. 16, 2012) (awarding one-third of the fund, yielding a multiplier of 2.93).

Although both methods bear on the analysis, the percentage method is the most appropriate methodology in this case for several reasons. First, the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive" to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (quotation marks and citation omitted); *see also Fleisher v. Phoenix Life Ins. Co.*, No. 14-cv-8714 (CM), 2015 WL 10847814, at *14 (S.D.N.Y. Sept. 9, 2015). Here, Class Counsel negotiated a large settlement to Class Members' and Opt-in Plaintiffs' great benefit. A percentage-of-the-fund fee award will encourage other plaintiffs' lawyers to do the same.

Second, the percentage method is closely aligned with market practices because it mirrors the practice of contingent fee attorneys who "typically negotiate percentage fee arrangements with their clients." *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011) (quoting *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded"); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (characterizing the percentage approach as "uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys").

Class members' evaluation of what is a fair market rate for the representation they received is perhaps the most important measure of the reasonableness of the fee. For both named Plaintiffs

and absent class members, having a lawyer willing to work on a one third contingency basis was the only way they could afford to litigate their claims and 25% for fees is more than reasonable by these measures. Class members' approval of this rate is evidenced by the fact that none have objected to any of the terms of the settlement. *See NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 10 CIV. 4429-LAP, 2016 WL 3369534, at *1–2 (S.D.N.Y. May 2, 2016) (awarding requested attorneys' fees and litigation expenses in part because there were no objections to same); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-CV-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (finding the amount of attorneys' fees awarded fair and reasonable based in part on "the absence of any objections from any Class Members to either the application for an award of attorneys' fees or expenses to Lead Counsel"); *Voisin v. Bartell Media Corp.*, No. 76 CIV. 3954, 1982 WL 1359, at *7 (S.D.N.Y. Dec. 2, 1982) ("The reaction of the class to the proposed settlement was favorable . . . The lack of objection to the proposed settlement and application for attorneys' fees by plaintiff's counsel suggests that the members of the class were satisfied with the settlement and found it fair and reasonable.").

Attorneys who litigate major class actions against large well-funded companies, would never handle such cases without a 1/3 contingency fee. It is far too risky to regularly engage in cases such as this one, for more limited rewards. Given the exorbitant cost of funding the litigation over a period of years, and the risk that attorneys might never be paid for years of work, attorneys regularly handling this type of litigation would themselves risk insolvency by bringing these cases without a likely percentage recovery in their successful cases. If courts were to impose restrictions on such a recovery, the pool of competent attorneys to handle such cases would simply dry up. That is not the FLSA's intention. The rationale behind a percentage recovery is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighb'd Ass'n v. Cty. of Albany &*

6

*Albany Cty. Bd. of Elections*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 522 F.3d 182, 191 (2d Cir. 2008). While *Arbor Hill* does not address a common fund fee petition, it supports use of the percentage of the fund method. *Beckman*, 293 F.R.D. at 477 (reasoning that *Arbor Hill* supported fee award of one-third of the settlement fund); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (same); *deMunecas v. Bold Food, LLC*, No. 09-cv-00440(DAB), 2010 WL 3322580, at 9 (S.D.N.Y. Aug. 23, 2010) (same); *Clark v. Ecolab Inc.*, No. 04 Civ. 4488, 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (same).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999) (quoting *Court Awarded Attorney Fees*, 108 F.R.D. 237, 258 (1986)). In contrast, the lodestar method "compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Fleisher*, 2015 WL 10847814 at *14 n.4 (quoting *Wal-Mart*, 396 F.3d at 121 (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000))). Although courts still use the lodestar as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50. ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."); *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306–07 (3d Cir. 2005), as amended, (Feb. 25, 2005) (noting that the "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting," and that "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records"). Although not required, Plaintiffs have submitted their entire set of billing records to date for the Court's *in camera* review should it wish to do so.

**C. The Settlement Agreement's Provision of Fees at 25% of the Settlement Fund is Reasonable**

In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1) the time and labor expended by counsel;
(2) the magnitude and complexities of the litigation;
(3) the risk of litigation;
(4) the quality of representation;
(5) the requested fee in relation to the settlement; and
(6) public policy considerations.

209 F.3d at 50. All of the *Goldberger* factors weigh in favor of approving the fee request.

**i.      Class Counsel have Expended Extensive Time and Labor on this Case**

Class Counsel have expended significant portion of their available work time litigating this case over the course of four and one-half years. *Getman Decl.* ¶¶ 74-75, 84. During this time, Class Counsel have expended a total of approximately 5,300 attorney hours and 4,200 paralegal/support staff hours with extensive work speaking with Plaintiffs, preparing Plaintiffs' discovery demands, answering Defendant's demands, analyzing discovery, collective action certification, amending the complaint to add the NYLL Class, amending the complaint to add the California Class, class certification, summary judgment, pretrial motions and briefing, trial preparation, jury selection, a week of trial, settlement negotiations including extensive and complex damage calculations, drafting the Settlement Agreement and Notice, drafting the preliminary approval motion, ensuring the Notice was timely disseminated by the Settlement Administrator, locating Class Members whose Notices were returned as undeliverable, answering questions from Class Members about the settlement after notice was issued, and drafting this motion for final approval - all hours that could have been devoted to paid work, if Plaintiffs were to forego this case. *Getman Decl.* ¶ 75. Further, Class Counsel anticipate they will expend a minimum of 50 paralegal/support staff and

attorney hours on administering and enforcing the Settlement after final approval. *Getman Decl.* ¶ 78. Counsel has not received any fee for litigating the case nor received reimbursement for their expenditure of $148,884.35 in out of pocket costs to date. *Getman Decl.* ¶¶ 70, 74. Counsel undertook great financial risk in agreeing to handle this case. *Getman Decl.* ¶ 80. Loss of a case such as this one would be highly significant because GSD is a relatively small firm, consisting of only seven attorneys. *Getman Decl.* ¶ 84. This case involved a tremendous commitment of a significant proportion of Counsel's available work time, *id.*, for which the requested fees are deserved. Accordingly, this factor weighs in favor of approval of Class Counsel's requested fees.

### ii. The Magnitude and Complexity of this Litigation Warrant the Award of the Attorneys' Fees Requested

"FLSA claims typically involve complex mixed questions of fact and law. . . . These statutory questions must be resolved in light of volumes of legislative history and over [seven] decades of legal interpretation and administrative rulings." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). "Courts have recognized that FLSA cases can be complex, and that 'hybrid' cases involving FLSA 'opt-in' collective action and NYLL 'opt-out' class action brought under Rule 23 may add complexity." *Hart v. RCI Hosp. Holdings, Inc.* 166 Lab. Cas. P 36, 381, 2015 5577713, at *15 (S.D.N.Y. Sept. 22, 2015) (citing *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (citing *Johnson*, 2011 WL 4357376 at *17)). Adding to this complexity, this case involved both an NYLL Class and a California Class, each brought under Rule 23, in addition to the FLSA opt-in collective action, with different considerations at play in each. Of course, "justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks." *Beckman*, 293 F.R.D., at 479 (citing *Asoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)). Nevertheless,

while inherently most efficient, combining the actions increases the magnitude and complexity of the case.

Further adding to the size and complexity, this case entailed seeking extremely large data files in multiple forms, which had to be culled, sorted, reorganized, cleaned, and analyzed for Class Counsel to make any sense of the facts and gauging the scope of the damages. *Getman Decl.* ¶ 75. This process was exceedingly laborious and time-consuming for Class Counsel, all while they performed the more traditional discovery tasks of, inter alia, taking six depositions and defending 10 depositions; serving two sets of interrogatories and two sets of document requests; and responding to 33 sets of interrogatories and 32 sets of document requests. *Getman Decl.* ¶ 76. Discovery and privilege disputes abounded. *See, e.g.*, Dkts. 72, 77, 104, 111, 113, 124, 127, 150, 151.

And the case was extremely hard-fought by able counsel representing a defendant with almost unlimited resources to oppose the class. As Your Honor is aware from your assignment to the latter portion of the case in August, 2017, the case generated substantial motion practice. The docket contains over 500 entries and the parties made innumerable motions culminating in 5 days before a jury.

As this Court is well aware, this case involved complex factual and legal questions, including the applicability of the fluctuating work week (FWW) method of calculating damages, and the proof and compensability of hours worked both onsite and off. *See* 2/22/18 Hearing Transcript; 3/28/18 Hearing Transcript. The legal and factual complexity of these issues further support approval of Class Counsel's attorneys' fee request. *See Beckman*, 293 F.R.D., at 479-80 (recognizing that size and difficulty of a wage-and-hour case, including *inter alia*, mixed questions of fact and law, supported attorneys' fee award of one-third of the fund); *Tiro v. Pub. House Invs.,*

*LLC*, No. 11-cv-7679, 2013 WL 4830949, at *12-13, *16 (S.D.N.Y. Sept. 10, 2013) (awarding fees equal to one-third of the settlement fund where "[t]he numerous and complex issues involved in this [wage and hour] action support approval of Class Counsel's attorneys' fee request").

### iii.    Class Counsel Took on a Large Amount of Risk in Prosecuting this Case

The riskiness of the litigation is an important factor in determining a proper fee award. Uncertainty that any ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209 F.3d 43. "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *Id.*

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Getman Decl.* at ¶¶ 74, 80. Having litigated wage hour cases against Bloomberg, Counsel certainly knew that Bloomberg would continue to hire large firms for its defense and that the defense would have unlimited resources at its disposal. While counsel had settled much smaller cases against Bloomberg (those cases also took substantial discovery and motion practice to resolve even though none had proceeded to trial), Plaintiffs knew this case would be extremely hard fought. Yet, if Bloomberg were to prevail on its administrative or computer exemptions, Plaintiffs' would have lost the case and counsel would not receive a dime for years of work and would have lost millions of dollars' worth of their time, as well as hundreds of thousands of dollars in out of pocket expenses. Indeed, the administrative exemption is notoriously ambiguous and Plaintiffs did not prevail on their attempt to remove the defense on summary judgment. Defendant insisted the Analytics Department was significantly different from its prior help desk cases. The risk associated with taking contingency cases such as this one is generally borne the moment the case is taken,

prior to discovery, prior to rulings by the Court, and counsel can lose all compensation for their work in a great many ways. Class and collective wage and hour cases of this type are complicated, time-consuming, and highly uncertain when the decision is made to take the case. *Getman Decl.* at ¶ 80. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources—even on losing cases. *Getman Decl.* at ¶ 81. Due to the contingent nature of the customary fee arrangement, lawyers make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind, nor reimbursement of costs expended in the course of litigation. *Getman Decl.* at ¶ 82.

Moreover, that the case continued all the way to, and partially through, a jury trial further demonstrates the risk involved. Although Class Counsel was optimistic that Plaintiffs would have been successful had the case gone to verdict, the remaining factual issues for the jury, and legal issues for the Court in post-verdict damages calculations, are murky, complicated, and inherently risky for Plaintiffs and Class Counsel alike.

Class Counsel take on difficult cases like this one because we believe that they are important to these workers and to workers generally. *Getman Decl.* at ¶ 88. Class Counsel take seriously the responsibility to push for rulings favorable for employees. *Getman Decl.* at ¶ 89. Class Counsel continue to do so despite, unfortunately, having suffered losses in wage and hour cases over the years and also having had judgments both large and small that are entirely uncollectable. *Getman Decl.* at ¶ 90. Class Counsel understood that the outcome of the trial involved substantial risk. *Getman Decl.* at ¶¶ 44-46.

### iv.      Class Counsel's Representation has been of the Highest Quality

When assessing the quality of representation, courts review "the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Asare v. Change Grp. of N.Y., Inc.*, No. 12-cv-3371, 2013 WL 6144764, at *21 (S.D.N.Y. Nov. 18, 2013) (quoting *Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007)).

The $54.5 million recovery is substantial given the risks discussed above, and Class Counsel estimate this figure represents approximately 34% of the total possible recovery for the Class, had they ultimately been successful on each and every outstanding factual and legal question. For example, had the jury found for the Plaintiffs on the exemption issue, but found that (1) Analytics Representatives worked only two hours per week, on average, outside the office; and (2) that there was a clear, mutual understanding that Analytics Representatives' salary was meant to cover all hours they worked, no matter how many or few; the total recovery for the Class would be only approximately $35,695,000.[2] Given the risk inherent in the FWW issue, and the vast difference that single issue makes in the ultimate recovery for the Class, Class Counsel were very successful in their negotiation of the Settlement Amount from Bloomberg.

Moreover, Class Counsel's various incremental successes throughout this litigation were directly responsible for the favorable Settlement on behalf of the Class, and further demonstrates the high quality of Class Counsel's representation. For example, Class Counsel obtained conditional certification of a FLSA collective action and New York and California classes (Dkts. 37, 307, and 308); prevented decertification of the collective action (Dkt. 309); averted a stay (in this Court and the Court of Appeals) while Bloomberg appealed this Court's orders granting

---

[2] Additionally, this assumes that the Court would accept and use the Plaintiffs' methodology for damages calculations, which Bloomberg undoubtedly would dispute, which creates additional risk to the Class and to Class Counsel.

certification of the New York and California classes (Dkt. 335); and prevailed on numerous motions *in limine* and other pre-trial motions (*see* 2/22/18 Hearing Transcript; 3/28/18 Hearing Transcript). Even after the Term Sheet was signed, additional disputes were presented to the Magistrate to resolve the terms of the final Settlement Agreement.

Another factor in assessing the quality of representation with respect to the attorneys' fee award is the skill and experience of counsel. *See Anwar v. Fairfield Greenwich Ltd.*, No 09-cv-118, 2012 WL 1981505, at *2 (S.D.N.Y. June 1, 2012) (listing class counsel's extensive experience as a factor supporting fee award of one-third of the settlement fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (citing class counsel's experience as one factor supporting an attorneys' fee award of approximately 40% of the fund). Here, Class Counsel's significant experience successfully litigating wage hour cases around the United States has been recognized by numerous courts, including in this district. *See e.g.*, *Cilluffo v. Central Refrigerated Servs., Inc.,* 12 Civ. 00886-VAP-OPx, ECF 298, at 18-19 (C.D. Cal. April 3, 2018) ("The Court remains impressed by the result achieved in this case and the time and resources invested by Plaintiff's counsel."); *Herrington v. Waterstone Mortg. Corp.*, 3:11 Civ. 00779, ECF 157, at 5 (W.D. Wisc. Feb. 12, 2018) ("After many years of arbitration, plaintiffs' counsel obtained excellent results for the class."); *Herrington v. Waterstone Mortg. Corp.*, AAA No. 01 14 0000 4860 (July 5, 2017) (Pratt, Arb.) (former Second Circuit Judge George C. Pratt stating "Throughout, [Getman, Sweeney & Dunn has] performed ably, efficiently, and ethically, displaying admirable expertise, professionalism, and diligence in representing their many clients."); *Murphy, et al, v. Northern Dutchess Paramedics,* 7:11-cv-05661-LMS, ECF ¶ 15 (S.D.N.Y. Aug. 15, 2014) (Smith, M.J.) ("Class Counsel [Getman & Sweeney[3]] has extensive

---

[3] Getman & Sweeney, PLLC, became Getman, Sweeney & Dunn, PLLC on January 1, 2016.

experience in litigating wage and hour collective and class actions. Numerous courts have recognized Class Counsel's extensive experience in successfully litigating wage and hour cases."); *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011) (finding Getman & Sweeney to have "stellar" qualifications as class counsel in wage-and-hour class litigation); *Lewis v. Alert Ambulette Serv. Corp.*, No. 11-CV-442, 2012 WL 170049, at *15 (E.D.N.Y. Jan. 19, 2012) ("[Getman & Sweeney] has brought to bear its considerable experience in handling class actions, and other complex litigation, particularly claims of the type asserted in the present action"); *Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ("Both this Court and other district courts around the country have recognized Plaintiffs' counsel's experience and skill in prosecuting wage-and-hour class litigation."); *Bredbenner v. Liberty Travel, Inc.*, Civ. A. Nos. 09–905 (MF), 09–1248(MF), 09–4587(MF), 2011 WL 1344745, at *7, *20 (D.N.J. April 8, 2011) (finding Getman & Sweeney highly experienced and competent in wage-and-hour litigation.)

It bears noting that Bloomberg's counsel also is very experienced and capable, which further demonstrates the quality of Class Counsel in their success negotiating a favorable Class Settlement. *Tiro*, 2013 WL 4830949 at *14 ("'[T]he quality of opposing counsel is also important in evaluating the quality of [Class Counsel's] work.'" (alterations in original) (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004))); *see also Bredbenner*, 2011 WL 1344745 at *20 ("Defendants['] counsel are also savvy, experienced defense attorneys in wage-and-hour cases, and the ability to achieve a favorable result in a case involving such formidable defense counsel is a clear indication of the skill with which class counsel handled these cases." (citing *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 407 (D.N.J. 2006))).

Accordingly, this factor weighs in favor of approval of Class Counsel's requested attorneys' fee award.

### v.   The Requested Fees are Reasonable in Relation to the Settlement

"In using the percentage of the fund approach, the critical *Goldberger* factor is necessarily the size of the requested fee in relation to the settlement." *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 385 (S.D.N.Y. 2017) (Schofield, J) (citing *In re Colgate–Palmolive Co.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014)). "Courts in this district regularly approve percentage-based awards" similar to or exceeding the 25% requested here, which "is true in cases with similar or higher fee requests as this one." *Fleisher*, 2015 WL 10847814 at *16 (discussing class counsel's $13.5 million fee request in settlement that included $40.5 million cash payment plus non-monetary benefits) (citing, *inter alia*, *Velez v. Novartis Pharm Corp.*, No. 04-cv-09194 (CM), 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater."); *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229 (2d Cir. 2007) (affirming 30% award of a $42.5 million settlement)); *see also, e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement recovery); *In re Sadia S.A. Sec. Litig.*, No. 08 Civ. 9528(SAS), 2011 WL 6825235, at *3 (S.D.N.Y. Dec. 28, 2011) (awarding 30% of $27 million settlement recovery); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 135 (S.D.N.Y. 2010) (awarding 1/3 of $35 million recovery); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.3% of $510 million net settlement recovery); *In re Oxford Health Plans, Inc. Sec. Litig.*, No. MDL–1222 (CLB), slip op. at 7 (S.D.N.Y. June 12, 2003) (awarding 28% of $300 million settlement recovery); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358,

370 (S.D.N.Y. 2002) (awarding 1/3 of $11.5 million recovery); *In re Priceline.com, Inc. Sec. Litig.*, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (awarding 30% of $80 million settlement recovery).

Some courts have reasoned that in cases with large settlement amounts, "[a] sliding scale approach—awarding a smaller percentage of the settlement as the amount of the settlement fund increases—is appropriate in order to avoid overcompensating plaintiffs' counsel to the detriment of the class members they represent." *McGreevy*, 258 F. Supp. 3d at 385 (citing *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 772 F.3d 125, 134 (2d Cir. 2014); *Wal-Mart*, 396 F.3d at 122; *Goldberger*, 209 F.3d at 52). "At the same time, it is important to ensure that the fee awarded decreases in such a way that some percentage of each extra dollar gained for the class goes to counsel, so that attorneys do not fear that they will receive a smaller award by securing a larger award for the class." *McGreevy*, 258 F. Supp. 3d at 385 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445–46 (E.D.N.Y. 2014)).

Here, Class Counsel's request is in keeping with this factor and the public policy behind it, while compensating them for the amount of high-pressure work Class Counsel put into litigating this case over the course of four years. Class Counsel have implemented the "sliding scale" approach already in requesting an award of 25% of the Fund, rather than the 30% or even 33.33% awarded in other cases with equally large or even larger settlement funds. In light of the amount and quality of the work Class Counsel performed, and the risk they assumed, a fee award of 25% is appropriate in this case.

### vi. Public Policy Considerations Support the Reasonableness of Class Counsel's Requested Fees

Public policy considerations weigh in favor of Class Counsel's requested fees. In rendering awards of attorneys' fees, the Second Circuit and district courts consider "the social and economic

value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *Siler v. Landry's Seafood House-N.C., Inc.*, No. 13-cv-587(RLE), 2014 WL 2945796, at *11 (S.D.N.Y. June 30, 2014) (quoting *In re Sumitomo*, 74 F. Supp. 2d at 399). The FLSA and the state wage and hour laws are remedial statutes designed to protect workers. *See A.H. Phillips*, 324 W.S. at 493 (recognizing FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work") (quotation marks omitted); *Garcia v. Pasquareto*, 812 N.Y.S.2d 216, 217 (App. Term. 2004) ("[T]he public policy of the State of New York and the federal government is that the interest in enforcing wages and hours laws on behalf of all workers is paramount."). Adequate compensation for attorneys who protect those rights by taking on such risky litigation furthers the remedial purpose of those statutes. *See Hall v. ProSource Techs., LLC*, No. 11-cv-2502, 2016 WL 1555128, at *16 (E.D.N.Y. Apr. 11, 2016) (citing *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09-cv-486, 2012 WL 5305694, at *7 (E.D.N.Y. Oct. 4, 2012)); *Henry v. Little Mint, Inc.*, No. 12-cv-3996(CM), 2014 WL 2199427, at *15 (S.D.N.Y. May 23, 2014); *Sand v. Greenberg*, No. 08-cv-7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

An award of attorneys' fees helps to ensure that relatively small minimum wage and overtime claims can be heard. *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees, "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *see also In re Colgate-Palmolive*, 36 F. Supp. 3d at 325 ("[S]etting fees too low or randomly will create poor incentives to bringing large class action cases[.]"); *Amador v. Morgan Stanley & Co., LLC*, No. 11-cv-4326, Hr'g Tr. 16 (S.D.N.Y. Dec. 19, 2014) ("It's important that lawyers have incentives to bring [wage and hour] cases like this.").

### D.  The Lodestar Crosscheck Further Supports Class Counsel's Requested Fees

When courts in the Second Circuit apply the percentage of the fund method, they generally use the lodestar method as a "baseline" or "cross check." *Goldberger*, 209 F. 3d at 50. First, the lodestar is determined by multiplying the hours reasonably expended on the case[4] by a reasonable hourly rate.[5] *Hall*, 2016 WL 1555128 at *11. The multiplier, which results from the percentage of the fund method, is then compared to the lodestar to determine if the "multiplier" is reasonable. *See Wal-Mart*, 396 F.3d at 123 (deeming a multiplier of 3.5 reasonable and citing cases involving multipliers between 1.35 and 4.5). In calculating the lodestar for crosscheck purpose, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id.*

---

[4] Here, Class Counsel has maintained contemporaneous time records of the hours reasonably expended by each attorney and support staff participating in the case, and have provided these time records to the Court for *in camera* review. *Getman Decl.* at ¶¶ 6, 61. Class Counsel have minimized duplication of efforts as much as possible, maximized billing judgment, and made every effort to have work performed by the attorney or support staff with the lowest hourly rate who was able to perform it effectively. *Getman Decl.* at ¶ 77. Plaintiffs' counsel were particularly motivated to litigate this case as efficiently as possible, given that they were by no means guaranteed a recovery in this exceptionally risky case:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

[5] The reasonableness of Class Counsel's rates are discussed in greater detail in the *Getman Decl.* at ¶¶ 62-64.

### i.       The Lodestar Multiplier is Well Within the Reasonable Range

Class Counsel's request for 25% of the Fund, or $13,625,000, represents a multiplier of approximately 3.3. This is a decrease from the 3.5 multiplier cited in the preliminary approval motion, as Class Counsel has expended 500 more hours on the case since preliminary approval. Multipliers of this magnitude are regularly approved in cases such as this one. Class Counsel bore the overhead by paying in advance for lawyers', paralegals', and data scientists' salaries with significant time devoted to this case and foregoing other work to handle this case. *Getman Decl.* at ¶¶ 73, 85. Class Counsel has not received any fee for litigating the case for over four years, nor received reimbursement for their expenditure of nearly two hundred thousand dollars in out-of-pocket costs. *Getman Decl.* at ¶¶ 70, 74. (With the passage of time, the ultimate recovery of these costs in current dollars utterly fails to account for their true cost diminished by inflation, interest, and the carrying cost of debt which are a regular fact of life for contingent fee firms and the partners who operate them[6]). Counsel here undertook great financial risk in bringing this case against Bloomberg L.P. Had Plaintiffs not prevailed, the resulting lack of compensation would be even more significant because GSD is a relatively small firm, consisting of only seven attorneys.[7] *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014), ("Firms of this size face even greater risks in litigating large class actions with no guarantee

---

[6] In small firms such as GSD, the carrying costs of contingency fee litigation mean that partners may go years at a time without pay, and the ongoing salaries and overhead are covered by the assumption of tremendous debt for which partners are personally liable. *Getman Decl.* at ¶ 85. The firm and the partners must carry the costs of litigation through commercial lines of credit (at commercial rates of interest and with liens on personal assets), which fund the millions of dollars in ongoing salaries and overhead necessary to operate the law firms and continue the litigation. *Getman Decl.* at ¶ 86. When cases are not successful, either because a court or jury rules against the plaintiffs, or the defendant refuses to pay or becomes insolvent, these costs become the personal responsibility of the firm and its partners. *Getman Decl.* at ¶ 87.

[7] Four GSD attorneys, 2 data scientists, and 2 paralegals participated at trial and 2 more attorneys expended significant hours in both trial and pre-trial briefing.

of payment."). Small contingency fee firms, such as GSD take on extreme levels of debt to finance

their cases which drag on for years and counsel, when taking a case, have little ability to foresee

or control the length of time the case will take, or the amount of work that will be required to bring

it to conclusion.[8] *Getman Decl.* at ¶ 83. Thus, in committing to represent a group of plaintiffs

against a company such as Bloomberg, Class Counsel know that they may be involved in litigating

against a defendant with unlimited resources for up to a decade. Firms handling cases on

contingency simply must obtain multipliers in their successful cases, to stay afloat during years

when cases drag out, or when cases are lost, or when a defendant simply cannot pay and the case

becomes uncollectable. GSD has many cases in these various categories and that is the nature of

this work. However, without a multiplier in cases where Plaintiffs are successful against a solvent

defendant, firms could never survive, much less thrive, and continue to do this important work.

"No one expects a lawyer whose compensation is contingent upon his success to charge, when

successful, as little as he would charge a client who in advance had agreed to pay for his services,

regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just

to make a fee depend solely on the reasonable amount of time expended." *Sakiko Fujiwara v. Sushi

Yasuda Ltd.*, 58 F. Supp. 3d 424, 438–39 (S.D.N.Y. 2014) (awarding multiplier of 2.3).

Courts in this district routinely approve settlements with similar or higher multipliers, even

when the award is a higher percentage of the total settlement fund. *See, e.g.*, *Ferrick v. Spotify

USA Inc.*, No. 16-CV-8412 (AJN), 2018 WL 2324076, at *10 (S.D.N.Y. May 22, 2018) (awarding

attorneys' fees of 30% of settlement fund, resulting in multiplier of approximately 5.02, because

---

[8] "It is well-established that litigation risk must be measured as of when the case is filed." *Bd. of
Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 CIV. 686 SAS, 2012 WL
2064907, at *2 (S.D.N.Y. June 7, 2012) (approving $27.5M in fees on $150M fund with risk
multiplier of 2.86). For that is when counsel assume the risks.

those fees "will adequately compensate Class Counsel, and it recognizes the complexity of the case, the risks involved in the litigation, the efforts of Class Counsel and the quality of representation provided, and the benefits to the class from the settlement"); *Pena v. Le Cirque, Inc.*, No. 14 Civ. 7541 (FM), Tr. Fairness Hrg. 7 (S.D.N.Y. Jan. 21, 2016) (approving award of one-third of the fund with multiplier of 4.9, and noting that the percentage award is meant to avoid discouraging able counsel from "bringing these cases by awarding more modest fees or requiring some sort of haircut"); *Yuzary*, 2013 WL 5492998 at *11 (approving award of 31.7% of the fund, yielding a multiplier of 7.6, as "nearer the higher end of the range of multipliers"); *Beckman*, 293 F.R.D. at 481-2 (approving award of one-third of the fund, yielding a multiplier of 6.3, as "near the higher end of the range of multipliers that courts have allowed"); *Sewell*, 2012 WL 1320124 at *10, *13 (awarding one-third of the fund, yielding a multiplier of 2.93).

It should also be noted that although the multiplier analysis is important, it can also be misleading because "had this case not settled, class counsel's hours, and hence the lodestar figure, would almost certainly have been greater, although it is by no means certain that the class's recovery would also have been larger. Indeed, given the vagaries of litigation and trial, it might have been lower. That, too, then, tends to show that the multiplier here is not so high as to raise any red flags over the size of the fee request." *Davis*, 827 F. Supp. 2d at 185 ($14M fee approved at multiplier of 5.3).

### ii. The Lodestar Multiplier Will Decrease As Counsel Necessarily Performs Significant Additional Work

Class Counsel anticipate they will expend a minimum of 50 paralegal and attorneys' hours on the remainder of this litigation - administering and enforcing the Settlement, during which time the lodestar multiplier only will decrease. *Getman Decl.* at ¶¶ 63, 78. Class Counsel will spend significant time in preparing for and attending the final fairness hearing, preparing the final

allocations, communicating with the Settlement Administrator, ensuring the settlement payments are issued by the Settlement Administrator properly and timely, continuing to respond to Class Members' and Opt-in Plaintiffs' inquiries about the settlement and then its tax consequences. *Getman Decl.* at ¶ 79. In light of the fact that Class Counsel will likely perform substantial work even after the final approval hearing, which will further reduce the lodestar multiplier, Class Counsel's request is "even more reasonable than it appears at first glance." *Beckman*, 293 F.R.D., at 482.

### iii.    In Performing a Lodestar Cross-Check, Class Counsel's Rates are Reasonable Market Rates

If the Court elects to perform a lodestar cross-check, it must review counsel's hours and rates. The rates used in calculating Class Counsel's lodestar are consistent with rates used by courts in this district. *See Zorrilla v. Carlson Rests. Inc.*, No. 14-cv-02740-AT, ECF 514 ¶ 9 (S.D.N.Y. Apr. 9, 2018). The billing rates in *Zorrilla* significantly exceed Plaintiffs' billing rates here. For example, Outten and Golden, a wage-and-hour law firm located in New York City that is comparable to GSD, submitted the rate of $235-285 for paralegals, while GSD bills $215. O&G bill $950 for two partners admitted to the bar in 1990 and 1998, while Mr. Getman was admitted in 1985 and bills at $880 per hour. *See also Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (applying class counsel's hourly rates of $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals for purposes of lodestar crosscheck in granting requested fee of one-third of the settlement fund in wage and hour action); *Guallpa v. N.Y. Pro Signs Inc.*, No 11-cv-3133, 2014 WL 2200393, at *9-10 (S.D.N.Y. May 27, 2014) (approving rate of $600 per hour, in wage-and-hour case, for attorney who graduated law school in 1995), *R. & R. adopted sub nom.*, No. 11-cv-3133(LGS), 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).

23

GSD rates have been repeatedly approved by the Courts, including this Court. *See, e.g.*, *Herrington v. Waterstone Mortgage Corp.*, 3:11-cv-00779-bbc (E.D. Wis.); *Murphy v. Northern Dutchess Paramedics*, 11 Civ. 5661 (S.D.N.Y. Aug. 15, 2014); *Clark v. Ecolab, Inc.*, 1:07 Civ. 08623-PAC, Dkt. 105 (S.D.N.Y May, 11, 2010), *Young v. Cooper Cameron*, 04 Civ. 5968 (S.D.N.Y. Mar. 30, 2009), *Ayers, et al. v. SGS, et al.*, 03 Civ 9078 (S.D.N.Y. Sept. 9, 2008), and *Moreno v. U.S.*, 05 Civ. 142C, (Federal Court of Claims Oct. 7, 2010). Rates were also approved as lodestar crosschecks in *Martinez-Hernandez v. Butterball*, 5-07 Civ. 00174-H (E.D.N.C. 2012), *Salazar-Martinez v. Fowler Bros. Farm*, 6:10 Civ. 06257 (W.D.N.Y. 2012), and they have been approved in many other cases. *See e.g. Driscoll v. The George Washington University*, 1:12 Civ. 00690-ESH, Dkt. 98, p. 23 (D.D.C. July 17, 2014) (approving GSD rates based on the Laffey Matrix); *Morangelli v. Roto-Rooter Services Com.*, 1:10 Civ. 00876-BMC, Dkt. 292, p. 9 (E.D.N.Y. Jan. 7, 2014) (awarding counsel fee request based on the percentage of the fund method); *Smith v. Nagai*, 1:10 Civ. 08237 (PAE) (JCF), Dkt. 35 (S.D.N.Y. May 5, 2012); *Morocho v. Eddie*, 12 Civ. 0308 (VB) (LMS), Dkt. 100 (S.D.N.Y. Dec. 10, 2012); *Llandez v. Service One Janitorial*, 04 Civ. 2210 (SCR), Dkt. 22 (S.D.N.Y. Jan. 25, 2007); *Williamson v. BellSouth*, 04 Civ. 9774 (RJH)(KNF), Dkt. 27 (S.D.N.Y. July 21, 2006); *Bragg v. Terrier Claims Services*, 05 Civ. 7280 (CM)(LMS), Dkt. 28 (S.D.N.Y. July 21, 2006); *Crosby v. Independent Living, Inc.*, 02 Civ. 8314 (SCR)(LMS), Dkt. 33 (S.D.N.Y. Aug. 16, 2006); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 03 Civ. 1166 (LMS), Dkt. 74 (S.D.N.Y. March 22, 2006); *Brumley v. Camin Cargo Controls, Inc.*, 2:08 Civ. 01798-JLL-MAH, Dkt. 234 (D.N.J. Mar. 26, 2012); *Bredbenner*, 2011 WL 1344745 at *22.

### iv.         Class Counsel is Entitled to Reimbursement of Reasonable Litigation Costs

Class Counsel requests reimbursement of $148,884.35 in out-of-pocket expenses to be paid from the Settlement Fund. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Beckman*, 293 F.R.D. at 482 (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.")). Here, Class Counsel's actual expenses of $148,884.35 were incidental and necessary to the representation of the Class. *Getman Decl.* at ¶¶ 70, 72. These expenses include consulting fees, transportation and meal costs, filing fees, and electronic legal research, which this Court has found to be reimbursable. *See, e.g., Reiseck v. Universal Commc'ns of Miami, Inc.*, No. 06 CIV. 0777 LGS JCF, 2014 WL 5374684, at *8 (S.D.N.Y. Sept. 5, 2014) ("expenses relating to travel, including transportation and meals, are routinely recoverable"); *Matheson v. T-Bone Rest., LLC*, No. 09 CIV. 4214 DAB, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (awarding reimbursement of class counsel for mediator's fees, expert fees, consultant fees, process server charges, telephone charges, postage, transportation and working meal costs, photocopies, and electronic research because such expenses "are reasonable and were incidental and necessary to the representation of the class").

### CONCLUSION

For all the forgoing reasons, Plaintiffs respectfully request that the Court approve Class Counsel's requested fees and reimbursement of costs as fair.

Dated: October 5, 2018

Respectfully Submitted,

*/s/ Dan Getman*
GETMAN, SWEENEY & DUNN, PLLC
Dan Getman
Lesley Tse
Artemio Guerra
Meagan Rafferty
260 Fair Street
Kingston, NY 12401
(845) 255-9370
dgetman@getmansweeney.com

*Counsel for Plaintiffs*