IAFKROSC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ERIC MICHAEL ROSEMAN,
ALEXANDER LEE, and WILLIAM VAN
VLEET, individually and on
behalf of others similarly
situated,

                Plaintiffs,

           v.                              14 CV 2657 (DLC)

BLOOMBERG L.P.,

                Defendant.

------------------------------x
                                         New York, N.Y.
                                         October 15, 2018
                                         5:00 p.m.
Before:

                    HON. DENISE COTE,

                                         District Judge

                       APPEARANCES

GETMAN SWEENEY & DUNN PLLC
     Attorneys for Plaintiffs
BY:  DAN GETMAN
     LESLEY TSE
     MEAGAN RAFFERTY

JONES DAY
     Attorneys for Defendant
BY:  TERRI L. CHASE
     MICHAEL A. CASERTANO
```

1              (Case called)
2              THE DEPUTY CLERK:  Counsel, for the plaintiffs, please
3     state your name for the record.
4              MR. GETMAN:  Dan Getman, with Getman Sweeney & Dunn,
5     for the plaintiffs.
6              MS. TSE:  Leslie Tse, with Getman Sweeney & Dunn, for
7     the plaintiffs.
8              MS. RAFFERTY:  Meagan Rafferty, from Getman Sweeney &
9     Dunn, for the plaintiffs.
10             THE DEPUTY CLERK:  Thank you.
11             And for the defendant?
12             MS. CHASE:  Terri Chase, from Jones Day, for the
13    defendant.
14             MR. CASERTANO:  Michael Casertano, from Jones Day, for
15    the defendant.
16             THE COURT:  Welcome, everyone.  This is the fairness
17    hearing.
18             Is there anyone here who seeks to participate in
19    today's hearing by making a statement to the Court?
20             No?  Not hearing any response, I have a series of
21    motions.  They include:  A request for approval of a request
22    for attorneys' fees; the review of the fairness, adequacy and
23    reasonableness of the settlement; and also a request for
24    approval of awards, service awards, to members of the class
25    serving as plaintiffs.

1          Let's deal with the issue of settlement's fairness
2    first.
3          I reviewed this with care at the time of the
4    preliminary approval process.  This was a settlement reached
5    with the assistance of a magistrate judge of this court, Judge
6    Aaron, after a failure of a series of settlement discussions
7    with a privately retained mediator.  It's a review here of both
8    settlement of the class action and, of course, any settlement
9    in the FLSA case.
10         I'm prepared to rule, but I'll hear from any counsel
11   briefly if you'd like to make a further statement.
12         MR. GETMAN:  Your Honor, I don't need to belabor this.
13   I think our submissions were thorough.  If there are any issues
14   your Honor would particularly like us to address or where you
15   think there's something specific that would be useful to you, I
16   would be happy to do that.
17         I believe you know that there were no objections.
18   With a class of over 1500 people, not one person objected.
19   Parenthetically, several of the folks who opted out asked to
20   opt back in.  That was not an option that was available to them
21   in that context, but the point being, I think this is a very
22   favorable settlement.  We were at a well advanced stage at the
23   point that the settlement agreement was reached.  The parties
24   knew, I think quite well, what the risks were, including appeal
25   risks and time risks, in terms of when any amounts would be

1   paid if the case were to go forward without a settlement
2   agreement.
3           So we were really at a position of, I think, as
4   complete a knowledge as we could have about what risks we had
5   on where the jury might come out on the different questions.
6   This was very carefully considered, very hard-fought, to get to
7   a point where both sides could say yes to the settlement
8   agreement, recognizing the litigation risk issues that existed
9   for us and for the defendant.
10          So, with that said, I think the most important thing
11  at this point was thorough notice, thorough reach of the
12  notice, very few people that didn't get a notice, and of those,
13  not one did even an informal objection.
14          THE COURT:  Thank you.
15          Ms. Chase, is there anything you wish to add?
16          MS. CHASE:  Nothing, your Honor.
17          THE COURT:  Thank you.
18          Of course, I need to address the Grinnell factors.
19          This is a settlement of $54,500,000 in connection with
20  a position at Bloomberg that I'll describe as analytics desk
21  representatives.
22          The first issue is the complexity, expense and likely
23  duration of the litigation.  While this was complex litigation
24  insofar as it addresses labor law issues, it was very expensive
25  for both the plaintiffs and the defendant.  It was settled

during the trial, after the plaintiffs rested.  There were 16 witnesses who had testified.  As I mentioned, this was settled with the assistance of Magistrate Judge Aaron at that point.

Needless to say, all discovery had been taken; summary judgment motion practice, motions in limine had all been addressed.  This lawsuit had been filed in 2014, so it had been pending a number of years.

The second issue is the reaction of the class to the settlement.  As counsel mentioned, there were no objections.  There had been ultimately about 30 opt-ins to the collective action.  There were close to 1500 class members.  At an early stage in 2018, there were 62 people who had opted out.  This was a very sophisticated class.  These were educated people -- all had college degrees, some more than that -- some had work experience working at a job that required skill.

The third factor is the stage of the proceedings and the amount of discovery completed.  I've already covered that.

The fourth factor is the risk of establishing liability.  I think there were significant risks here, with respect to certain issues at least.  The defense was, among other things, that there was a clear mutual understanding between Bloomberg and its employees that the salary they received would cover all hours worked.  There were also risks with respect to the number of hours of overtime that the plaintiffs would be able to show at trial and convince a jury

should be appropriately found by them.

The fifth factor is the risks of establishing damages. For the reasons I've just addressed, these were significant as well; particularly, the number of hours worked outside of what we call badge hours, that is, the hours between badging in and badging out of the office location. The plaintiffs asked for ten overtime hours in addition to badge hours or any overtime hours included in the badge hours, and they had a significant risk of failing to establish that.

The sixth factor is the risks of maintaining a class action through trial. I believe that was very small.

The seventh factor is the ability of the defendants to withstand a greater judgment. They could easily have withstood a greater judgment.

The eighth factor is the range of reasonableness of the settlement fund in light of the best possible recovery. The plaintiffs calculate that this is a recovery of roughly 34 percent of their best possible recovery. I calculate, roughly, that it is 50 percent of the award that they sought before liquidated damages were assessed. The plaintiffs calculated, at least at one point, roughly $92 million before liquidated damages if a jury returned a finding largely in the plaintiffs' favor, including ten hours of overtime work in addition to the badge hours.

The last factor is the range of reasonableness of the

1    settlement fund to a possible recovery in light of all the
2    attendant risks of litigation.  I think it's good.  I think
3    it's strong.  I think it's a favorable settlement for the class
4    when all these factors are considered.
5         So I approve the settlement here.
6         The next motion to address is the motion for service
7    awards.  It is not my practice to give service awards.  I think
8    there are strong policy reasons against them.  After all,
9    certainly, when it comes to the named plaintiffs, they have to
10   be representatives of the class, and in reviewing whether or
11   not a settlement amount is fair, adequate and reasonable for
12   all of the class members, they should have no special benefit
13   that they will receive, and they shouldn't be motivated at all
14   by the desire to receive extra money for just themselves.  So
15   that's my general practice.
16        Here, however, I am inclined to give service awards.
17   There's no basis to find that this is a collusive settlement.
18   It is hard-fought litigation, hard-fought right up until the
19   end.  We were in the middle of trial or more than halfway
20   through the trial.  It had failed to settle despite best
21   efforts of the mediator on numerous occasions, and only through
22   the assistance of a skillful magistrate judge was this
23   settlement reached.
24        This is a class in which the named plaintiffs and
25   those who actively participated with plaintiffs' counsel in

Case 1:14-cv-02657-DLC   Document 542   Filed 10/25/18   Page 8 of 11     8
IAFKROSC

1   pursuit of the trial, either by testifying or being ready to
2   testify, faced both employment and reputational risk, which
3   doesn't always appear in a case.
4           The service awards will also compensate those who
5   spent their time and energy, and in some cases had to travel,
6   to participate in this litigation; and, therefore, I will
7   approve in full the request for the service awards.
8           The final motion here is a motion for an award of
9   attorneys' fees.  Again, I've read the papers, I'm prepared to
10  rule, but, counsel, if there's anything you want to say
11  briefly, I'll hear you.
12          MR. GETMAN:  I believe everything is in our papers,
13  your Honor.  If there's anything you have questions about, I'd
14  be happy to answer.
15          THE COURT:  Thank you.
16          This case was conducted before two different district
17  court judges and before a magistrate judge, over the course of
18  roughly four and a half years.  There were over 5,000 attorneys
19  hours and paralegal time expended.  Plaintiffs' firm is a small
20  firm, and four of its seven attorneys participated in the
21  trial.
22          I reviewed the layout, however, of the individual time
23  expended by each of the attorneys, data analysts, and
24  paralegals, and found that the work was properly organized and
25  divided among those professionals.  The bulk of the legal work

was done by three lawyers, with one lawyer responsible for the largest number of hours.  There was one paralegal and one data analyst, who also spent a far larger amount of time than anyone else in those occupations on the case.

The second factor I'm supposed to consider is the magnitude and complexity of the litigation.  I've already addressed that.  The litigation was complex and demanding.

The risk of litigation:  While this was a contingent-fee lawsuit, the risks from the litigation were moderate to significant in terms of at least any substantial recovery.

The quality of representation for the class was excellent.  It was a well litigated case and well tried case at trial.

The requested fee in relationship to the settlement is the next factor.  There's a request here for 25 percent of the recovery, plus an amount in expenses.  So there's a request of $13,625,000 in attorneys' fees and 149,000 in expenses.  As again discussed in connection with the earlier motion, this request was described generally in the notice given to the class and the papers provided to the class, and there has been no objection. And I think the class, rightly, again, is a sophisticated class, and has concluded that but for able, dedicated counsel, they would have seen no recovery.  So counsel is entitled to what is a generous award here.

Public policy considerations: Well, labor laws are absolutely foundational here in our democracy. It's important that they're abided by. It's important that issues of compliance are litigated. It's important that there be well qualified counsel doing that, for both the plaintiffs and the defendants. Therefore, there's a strong public policy in support of giving appropriate compensation to plaintiffs' counsel, who have taken the case on a contingent-fee basis and borne the costs of that litigation for years.

Looking at the lodestar method: This request reflects a multiplier of roughly 3.3, and, as I've mentioned, I thought the case was well organized, with the bulk of the work being done by three lawyers, one paralegal and one data analyst. The lodestar is something over 4 million, and so this multiplier is generous but within the range of reasonableness; and, therefore, I approve the award of attorneys' fees and expenses, as requested.

The expenses were just under 150,000. And I've looked at the backup support for those categories, including for the consultant. I've satisfied myself that the expenses, in the context of this kind of litigation, were reasonable.

Is there anything else I need to do, Mr. Getman?

MR. GETMAN: No, your Honor. I thank you very much for those kind words.

THE COURT: Yes.

IAFKROSC

1        Ms. Chase?

2        MS. CHASE:  Nothing else, your Honor.

3        THE COURT:  I mean, the case was just terribly well
4   done, it was hard-fought at every point, as it should be, and
5   yet even though counsel were suitably aggressive, you were
6   always respectful of the process, and it's a real pleasure for
7   me to preside over it, and I want to thank you all.

8        MR. GETMAN:  Thank you, your Honor.

9        MS. CHASE:  Thank you, your Honor.

10       MR. GETMAN:  On the other side, your Honor, it makes
11  our job, which is so hard, such a different experience to do it
12  before a judge who's just running such an organized, efficient,
13  completely fair courtroom, so thank you.

14       THE COURT:  Thank you.

15       MS. CHASE:  Thank you, your Honor.

16                          * * *